[No. B146707. Second Dist., Div. Four. Oct. 24, 2001.]

MARION MEHRTASH, Plaintiff and Appellant, v.
ATA MEHRTASH et al., Defendants and Respondents.

## COUNSEL

Gary E. Snelson for Plaintiff and Appellant.

John F. Hendry for Defendants and Respondents.

## OPINION

## VOGEL (C. S.), P. J.—

### INTRODUCTION

This is an action by a creditor to set aside, as a fraud upon her, a conveyance of the debtor's home to his stepsons. After plaintiff presented her evidence at trial, the court, pursuant to Code of Civil Procedure section 631.8, granted judgment in favor of the defendants, because plaintiff failed to prove that the value of the property exceeded encumbrances and senior liens. We hold this was a proper basis for a judgment in favor of defendants; therefore, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Marion Mehrtash is the ex-wife of defendant Ata Mehrtash. Ata is currently married to defendant Firouzeh Mehrtash, who has two adult sons, defendants Abdol Majeed Ghaffari and Ardeshir Ghaffari.[1]

The goal of plaintiff's present action is to set aside Ata's quitclaim deed of his residence to Abdol Majeed and Ardeshir in April 1998, as a fraud upon plaintiff as a creditor of Ata for a money judgment for spousal support.

### *The Property Transactions*

During 1995-1997, Ata and Firouzeh lived in a leased house in Palos Verdes. Firouzeh desired to purchase the house as an investment for her sons. The house was purchased in January 1998. The price was $540,000. A downpayment of $33,500 was made by a series of checks signed by Firouzeh, Ata, and Abdol Majeed. The property was encumbered by a total of $510,000, consisting of a first trust deed bank loan for $283,500, and a second trust deed note to the seller for $226,500. According to Ata and Firouzeh, the price was actually $11,000 higher, consisting of a "side" third trust deed note to the seller, which Firouzeh had paid off by the time of trial.

---

[1]Solely to avoid confusion and repetition of last names, we refer to the individual defendants by their first names.

Ata, a medical doctor, was listed as the primary borrower on the application for the first trust deed bank loan, which stated that title was to be taken in the names of Ata, Abdol Majeed, and Ardeshir. Ata, Abdol Majeed, and Ardeshir signed the first and second trust deed notes. According to Ata and Abdol Majeed, Ata was on the application and the notes in order to help qualify for the loans, but they intended the property to be for Abdol Majeed and Ardeshir.

Escrow closed and title passed to Ata, Abdol Majeed, and Ardeshir in January 1998. Firouzeh had executed a quitclaim deed to Ata of any interest she might have in the property. Then in April 1998, Ata executed a quitclaim deed to Abdol Majeed and Ardeshir of any interest Ata might have in the property. This is the transfer that plaintiff seeks to set aside as a fraud upon her. The quitclaim deed was labeled a gift. Abdol Majeed and Ardeshir gave nothing of value for the quitclaim deed from Ata. Abdol Majeed and Ata testified the quitclaim was in accordance with the parties' understanding that the purchase of the property was always intended to be for Abdol Majeed and Ardeshir.

Despite the transfer of title to Abdol Majeed and Ardeshir, Ata and Firouzeh have been living in the house as their home, and Firouzeh has been making the payments on the loans, taxes, and maintenance. Ata and Firouzeh claimed the source of payments was separate income of Firouzeh; plaintiff's expert witness claimed the source of payments was Ata's medical practice. Abdol Majeed and Ardeshir do not live in the house and do not pay on the loans, taxes, and maintenance.

### Creditors and Judgments

Plaintiff is attempting to enforce a money judgment against Ata for back spousal support. Apparently by a judgment entered in September 1992, Ata was ordered to pay spousal support to plaintiff. In November 1998, Ata was found in contempt for failure to pay spousal support. In August 2000, plaintiff obtained a writ of execution on a money judgment for support, in an amount over $238,000.

In the trial of the present action, plaintiff attempted to show that Ata was insolvent at the time of the quitclaim deed of the Palos Verdes house to Abdol Majeed and Ardeshir. As part of her proof, plaintiff introduced evidence of judgments obtained by other creditors against Ata. Several of these were proved by abstracts of judgment that had been recorded in Los Angeles County by the other creditors in order to protect judgment liens in their favor. (Code Civ. Proc., § 697.310.)

Exhibit 1 was an abstract of judgment, issued on November 7, 1994, and recorded in Los Angeles County on November 18, 1994, of a judgment entered on October 11, 1994, in favor of MBNA America Bank, for $42,345.

Exhibit 3 was an abstract of judgment, issued on August 16, 1994, and recorded in Los Angeles County on August 24, 1994, of a judgment entered on June 28, 1994, in favor of Pacific Heritage Bank, for $58,061.

Plaintiff's evidence of the judgment in her favor that she seeks to enforce was exhibit 10, a writ of execution issued by court order on August 14, 2000, in the amount of $238,122, to enforce a judgment entered on September 25, 1992. Plaintiff introduced no evidence that she recorded an abstract of the 1992 judgment in Los Angeles County.

Ata is more than 65 years old. If he had title to his residence, its sale to enforce a money judgment would be subject to a homestead exemption of $125,000, as well as other liens and encumbrances. (Code Civ. Proc., §§ 704.730, subd. (a)(3), 704.740, subd. (a), 704.800, subd. (a).)

### *Trial Court Proceedings*

Defendants' trial brief filed October 10, 2000, argued, among other points, that plaintiff was not entitled to set aside the quitclaim deed without proving that she as a creditor was defrauded and injured thereby. Defendants pointed out the amounts of the first and second trust deed encumbrances on the property, the abstracted judgments of other creditors, and Ata's potential homestead exemption. Defendants reiterated this point in their supplemental points and authorities filed October 16, 2000, and in oral argument to the trial court. Plaintiff's supplemental trial brief filed October 16, 2000, failed to respond directly to that issue. Plaintiff argued orally to the trial court that it was not necessary for her to prove there was any equity in the property.

The trial court decided to grant judgment to defendants pursuant to Code of Civil Procedure section 631.8. Its statement of decision comments, "At the time of the quitclaim deed, the ex spouse had not recorded her judgment. However, the plaintiff introduced evidence of other liabilities. The Court finds that plaintiff failed to introduce any evidence of the fair market value at the time of the transfer 75 days after the purchase . . . and plaintiff failed to show any evidence that the defendants' interest in the property with all of the trust deeds exceeded the net value of the trust deeds."

### DISCUSSION

 Under some circumstances a creditor may sue to set aside a transfer of property by a debtor, where the transfer defrauds that creditor. (Civ. Code,

§ 3439 et seq., the Uniform Fraudulent Transfer Act.) A well-established principle of the law of fraudulent transfers is, "A transfer in fraud of creditors may be attacked only by one who is injured thereby. Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential. It cannot be said that a creditor has been injured unless the transfer puts beyond [her] reach property [she] otherwise would be able to subject to the payment of [her] debt." (16 Cal.Jur.3d (1983 rev.) Creditors' Rights and Remedies, § 430, p. 540, fns. omitted; *Bennett v. Paulson* (1935) 7 Cal.App.2d 120, 123 [45 P.2d 369]; *Haskins v. Certified Escrow & Mtge. Co.* (1950) 96 Cal.App.2d 688, 691 [216 P.2d 90]; 37 Am.Jur.2d (2001) Fraudulent Conveyances and Transfers, § 157, p. 644; 37 C.J.S. (1997) Fraudulent Conveyances, § 46, p. 579.)

■ Plaintiff contends this is an obsolete requirement that is no longer the law. She points out that it was once *expressly* stated in former Civil Code section 3441, which was repealed in 1939 upon adoption of the Uniform Fraudulent Conveyance Act. (*Haskins v. Certified Escrow & Mtge. Co., supra*, 96 Cal.App.2d at p. 691.)[2] But *Haskins* itself goes on to state, "We think the repeal of the section is not significant since it was merely declaratory of an established principle of equity." (*Haskins, supra*, at p. 691.) Contrary to plaintiff's contention, this concept remains implied by the current statutory language, which states that a transfer "fraudulent *as to a creditor*" may be set aside. (Civ. Code, §§ 3439.04, 3439.05, italics added; *A/S Kreditt-Finans v. Cia Venetico De Navegacion* (E.D.Pa. 1983) 560 F.Supp. 705, 711, affd. (3d Cir. 1984) 729 F.2d 1446.) As stated in *Haskins*, this is a principle of equity: a plaintiff seeking the equitable relief of setting aside a transfer of property must show entitlement to relief and inadequacy of a remedy at law. (37 C.J.S., *supra,* Fraudulent Conveyances, § 46, p. 579.) This requirement is also implied by another fundamental maxim of jurisprudence, " '[t]he law neither does nor requires idle acts.' " (*Bennett v. Paulson, supra*, 7 Cal.App.2d 120, 123; Civ. Code, § 3532.) The principle is restated in the current legal encyclopedias, cited *ante*. It seldom needs restatement in case law, because ordinarily creditors do not bother to seek avoidance of debtors' conveyances without a clear prospect of profiting by the litigation. (*A/S Kreditt-Finans v. Cia Venetico De Navegacion, supra*, 560 F.Supp. at p. 711 & fn. 15.)

In *A/S Kreditt-Finans v. Cia Venetico De Navegacion, supra*, 560 F. Supp. 705, the court held the creditor could not maintain an action to set aside a

---

[2]Former Civil Code section 3441 provided, "A creditor can avoid the act or obligation of his debtor for fraud only where the fraud obstructs the enforcement, by legal process, of his right to take the property affected by the transfer or obligation." (Deering's Ann. Civ. Code (1931) § 3441, p. 1084.)

conveyance as fraudulent, where the mortgage debt owed to secured lenders exceeded the fair market value of the property and thus the complaining creditor could not have recovered anything on its debt even if the transaction were set aside and the property were sold to enforce the debt. (*Id.* at pp. 708, 710, 711-712 & fn. 15 [citing, among others, the California *Haskins* case, *supra*, 96 Cal.App.2d 688].) In *Holthaus v. Parsons* (1991) 238 Neb. 223 [469 N.W.2d 536], the court cited the California *Haskins* case and applied it on facts analogous to the present case. A creditor sought to set aside the debtor's transfer of his home. The home was worth $58,000. It was subject to a $24,000 mortgage and to two prior judgment liens of $10,000 and $47,000. The court concluded, "it is obvious that appellee was not injured by the conveyance and therefore was not entitled to relief under the Uniform Fraudulent Conveyance Act." (*Id.* at p. 538.)

In the present case, the evidence showed the property was heavily mortgaged. When it was purchased for $540,000 (or $551,000 if the testimony about a "side" deal with the seller is believed), it was subject to first and second trust deed encumbrances of $510,000. Then plaintiff's own evidence revealed at least two judgment liens of other creditors, for about $42,000 and $58,000 (total $100,000). These creditors recorded abstracts of judgment in 1994 and thereby obtained judgment liens on Ata's real property in Los Angeles County. (Code Civ. Proc., §§ 697.310, 697.340.) In the absence of evidence that plaintiff recorded an abstract of judgment prior to them, they obtained a priority in time. (Code Civ. Proc., § 697.380, subd. (c).) Plaintiff did not obtain her execution lien until 2000. (Code Civ. Proc., § 697.710.) Even assuming the allegedly fraudulent conveyance were set aside and the property were hypothetically available to enforce plaintiff's money judgment, it could not be sold without a court order because it is Ata's dwelling, and could not be sold without a minimum bid equal to all encumbrances and senior liens plus the homestead exemption. (Code Civ. Proc., § 704.800, subd. (a); *Rourke v. Troy* (1993) 17 Cal.App.4th 880, 885-886 [21 Cal.Rptr.2d 660].) Plaintiff produced no evidence that the value of the property could support any net recovery for her in the event the conveyance were set aside. The trial court was authorized to consider this a failure by plaintiff to prove an essential element of her case (that the allegedly fraudulent conveyance injured her), and therefore was authorized to grant judgment for defendants denying plaintiff's requested relief, pursuant to Code of Civil Procedure section 631.8.

Plaintiff does not claim on appeal that the evidence showed she was injured financially by the allegedly fraudulent conveyance; she only contends, erroneously, that she is not required to prove injury. Almost all of plaintiff's brief on appeal attacks a different issue. She points out that the

trial court's statement of decision, following the sentence describing plaintiff's failure to prove the value of the property, concludes, "Therefore, there was no intent to defraud the plaintiff." She contends this conclusion is wrong, because a creditor need not prove actual intent to defraud, but instead may rely on proof that the debtor did not receive reasonably equivalent value for the transfer and the debtor was insolvent. (Civ. Code, § 3439.05.) We conclude that plaintiff is attacking a straw man. Even assuming that plaintiff proved the elements of a constructively fraudulent transfer, plaintiff failed to prove she was injured by it. Therefore the trial court properly granted judgment for defendants, and the court's comments concerning intent are not controlling. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10].)

This conclusion renders moot plaintiff's other contention that the trial court erred in sustaining a demurrer to plaintiff's cause of action for conspiracy, pleaded in conjunction with her cause of action to set aside the transfer as a fraud upon her as a creditor. ■ "Strictly speaking, . . . there is no separate tort of civil conspiracy, and there is no civil action for conspiracy to commit a recognized tort unless the wrongful act itself is committed and damage results therefrom." (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 44, 45, pp. 107-108, italics omitted.) Because the trial court correctly granted judgment for defendants on the main cause of action, the conspiracy allegation is moot.

DISPOSITION

The judgment is affirmed.

Epstein, J., and Hastings, J., concurred.