[No. F056339. Fifth Dist. Nov. 24, 2009.]

FIDELITY NATIONAL TITLE INSURANCE COMPANY, Plaintiff and Appellant, v.
GORDON SCHROEDER et al., Defendants and Respondents.

COUNSEL

Campagne, Campagne & Lerner, Justin T. Campagne and Wiley R. Driskill for Plaintiff and Appellant.

Felger & Associates, Warren P. Felger and Jennifer D. Reisz for Defendants and Respondents.

OPINION

**KANE, J.**—On learning that plaintiff Fidelity National Title Insurance Company (Fidelity) was about to file an abstract of judgment as a lien against his real property, defendant Gordon Schroeder (Gordon) deeded his interest in a Fresno home that he co-owned with defendant Toni Richardson, also known as Toni Schroeder (Toni), over to Toni. The trial court found that Gordon intended to defraud Fidelity, but the transfer was not set aside under the Uniform Fraudulent Transfer Act (UFTA; Civ. Code, § 3439 et seq.) because no recoverable value remained in the real property after deducting existing encumbrances and Gordon's homestead exemption. The trial court also rejected Fidelity's other causes of action, including that of resulting trust. Fidelity appeals, contending the trial court failed to correctly apply the law when it denied relief under the UFTA and the resulting trust cause of action. We agree with the trial court that Fidelity was not entitled to relief under the UFTA, but disagree with its conclusion that Fidelity could not maintain a resulting trust cause of action. Accordingly, we reverse and remand for the trial court to determine, under the facts and circumstances of this case, whether Toni holds Gordon's one-half interest in the Fresno property as a resulting trust for the benefit of Gordon. If the trial court so finds, Fidelity's judgment lien will attach to Gordon's equitable interest, effective on the date Fidelity recorded its abstract of judgment.

## FACTS AND PROCEDURAL HISTORY

Gordon failed to pay court-ordered spousal support and his former wife, Elizabeth Schroeder (Elizabeth), obtained a judgment against him in the amount of $73,298. In 1996, the judgment was duly recorded in Fresno County. Years later, Gordon and Toni purchased a home on North Brunswick

Avenue in the City of Fresno, which home became their residence (the Fresno property). The vesting deed to the Fresno property placed title in both of their names, as joint tenants, and it also stated they were "husband and wife," even though they were not legally married.[1]

In 2002, Gordon and Toni refinanced the loan on their Fresno property. Fidelity was the title insurance company on behalf of the new lender, Long Beach Mortgage Company, in connection with the loan refinance. Fidelity failed to discover or disclose the existence of Elizabeth's prior judgment lien against Gordon's interest in the property, and consequently Fidelity became obligated under the title insurance policy to pay off the judgment lien. In May of 2004, Fidelity paid $73,298 to Elizabeth, and obtained an assignment of all rights under Elizabeth's judgment and lien. Thereafter, in early 2005, Fidelity inadvertently released the judgment lien, leaving it as holder of an unsecured judgment against Gordon.

Fidelity filed its original complaint against Gordon and Toni on December 14, 2006, alleging causes of action for unjust enrichment, money paid, and equitable subrogation. Gordon and Toni answered the complaint on February 20, 2007. In June of 2007, Fidelity filed its motion for summary judgment. In opposition to the motion, Gordon and Toni disclosed for the first time that they were not legally married. Since Fidelity had premised its summary judgment motion partly on Gordon's and Toni's status as husband and wife, on August 31, 2007, Fidelity's counsel agreed to withdraw its motion for summary judgment and, instead, informed opposing counsel it would attempt to secure a new judgment lien on the Fresno property.

A few days later, on September 3, 2007, Gordon and Toni executed a grant deed conveying the property from "Gordon Schroeder & Toni Richardson" to "Toni Richardson" for no consideration. The grant deed was recorded on September 4, 2007. Fidelity's abstract of judgment was recorded on October 10, 2007.

On December 10, 2007, Fidelity filed its first amended complaint asserting the following causes of action: (1) *declaratory relief*, to obtain a judicial declaration that Gordon and Toni were putative spouses and that Fidelity was entitled to collect its judgment from both Gordon's separate property and Toni's quasi-community property; (2) *fraudulent conveyance*, pursuant to

---

[1] Gordon and Toni apparently went through a marriage ceremony in Reno, Nevada, in March of 1994, but at that time Gordon was still legally married to Elizabeth; therefore, the Reno ceremony was not valid. Gordon and Toni did not believe they were legally married.

the UFTA, seeking to have the September 3, 2007, grant deed to Toni set aside as a fraud upon Fidelity's rights as a creditor; (3) *constructive trust*, against Toni, seeking a determination that based on fraud or other wrongdoing, she holds the Fresno property as a constructive trustee for Fidelity; and (4) *resulting trust*, against Toni, to obtain a ruling that the September 3, 2007, grant deed was merely to shield Gordon's ownership interest from creditors, and that Gordon's and Toni's true intention was she would hold legal title in trust for Gordon while he retained his equitable interest in the Fresno property. Under this theory, Fidelity's judgment lien would attach against Gordon's equitable interest.

Following a two-day bench trial, the trial court took the case under submission and ultimately issued a decision rejecting all four causes of action. Of interest to this appeal, the trial court denied relief on the UFTA cause of action because there was a failure to demonstrate any injury, since there was no value or equity in the Fresno property that Fidelity could reach. The trial court concluded there was no injury because Gordon's share in the equity of the property was exceeded by existing encumbrances and the automatic homestead exemption. The trial court denied relief on the constructive trust and resulting trust causes of action on the ground that "there is no claim that Fidelity is entitled to claim a one-half interest *in* the Property (as opposed to a judgment lien on one-half)." Judgment was entered in favor of Gordon and Toni on September 15, 2008. Fidelity's timely appeal followed.

## DISCUSSION

### I. *The UFTA Cause of Action*

#### A. *Standard of Review*

As noted, the trial court found that Fidelity was not entitled to relief under the UFTA because there was no recoverable equity in the property in light of existing encumbrances and Gordon's automatic homestead exemption. On appeal, Fidelity claims the trial court erred because the automatic homestead exemption was inapplicable to the UFTA claim. As this raises a question of the correct legal standard to apply under undisputed facts or of statutory interpretation and application to such facts, we undertake a de novo review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799–800 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

#### B. *Overview of the UFTA*

The UFTA permits defrauded creditors to reach property in the hands of a transferee. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390,

74 P.3d 166].) "A fraudulent conveyance under the UFTA involves ' "a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." ' [Citation.]" (*Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 829 [28 Cal.Rptr.3d 884].) "A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . , if the debtor made the transfer . . . as follows: [¶] (1) With actual intent to hinder, delay, or defraud any creditor of the debtor." (Civ. Code, § 3439.04, subd. (a)(1).) Civil Code section 3439.07 sets forth a creditor's remedies under the UFTA, including "avoidance of a transfer, attachment, and the equitable remedies of injunction and receivership as well as '[a]ny other relief the circumstances may require.' " (*Filip v. Bucurenciu, supra*, at p. 830; see Civ. Code, § 3439.07, subd. (a)(1).)

In order for a fraudulent transfer to occur, among other things, there must be a *transfer* of an *asset* as defined in the UFTA. (Civ. Code, § 3439.04; see, e.g., *In re Valente* (1st Cir. 2004) 360 F.3d 256, 260, 264 (*Valente*) [no transfer of asset for purposes of the UFTA if encumbrances exceed value of property at time of transfer].) In the definitional section of the UFTA, a "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset . . . ." (Civ. Code, § 3439.01, subd. (i).) "Asset" means "property of a debtor, but the term does not include, the following: [¶] (1) Property to the extent it is encumbered by a valid lien. [¶] (2) Property to the extent it is generally exempt under nonbankruptcy law." (Civ. Code, § 3439.01, subd. (a)(1), (2).)

The above definitions are relevant to the question of whether any *injury* occurred to the creditor as a result of the transfer, which is a necessary element for relief under the UFTA. "A well-established principle of the law of fraudulent transfers is, 'A transfer in fraud of creditors may be attacked only by one who is injured thereby. Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential. It cannot be said that a creditor has been injured unless the transfer puts beyond [her] reach property [she] otherwise would be able to subject to the payment of [her] debt.' [Citations.]" (*Mehrtash v. Mehrtash* (2001) 93 Cal.App.4th 75, 80 [112 Cal.Rptr.2d 802] (*Mehrtash*).)

In *Mehrtash*, the plaintiff sued under the UFTA to set aside the defendant's transfer of his home to his two stepsons. The plaintiff claimed the transfer was a fraud on her rights as a creditor under a 1992 money judgment for

spousal support. In 2000, the plaintiff obtained a writ of execution to enforce her judgment against the real property, and she sought to set aside the transfer under the UFTA. The trial court denied relief under the UFTA on the ground that the plaintiff failed to prove the value of the property exceeded the sum of existing encumbrances and senior liens; therefore, no injury was shown. (*Mehrtash, supra*, 93 Cal.App.4th at pp. 79–81.) The Court of Appeal affirmed because the record supported the trial court's finding that the plaintiff was *not injured* by the transfer. (*Id.* at pp. 80–81.)

In so holding, *Mehrtash* noted that at the time of the subject transfer in 1998, the dwelling had recently been purchased by the defendant for $540,000,[2] and the property was subject to first and second trust deed encumbrances totaling $510,000 plus two 1994 judgment liens totaling about $100,000. (*Mehrtash, supra*, 93 Cal.App.4th at p. 81.) There was no evidence that the plaintiff recorded an abstract of judgment to obtain a lien securing her 1992 judgment; therefore, the two 1994 judgment liens were prior in time to the plaintiff's execution lien obtained in 2000. (*Ibid.*) In addition, since the defendant was over 65 years old, the sale of his dwelling to enforce a money judgment "would be subject to a homestead exemption of $125,000." (*Id.* at p. 79 [citing Code Civ. Proc., §§ 704.730, subd. (a)(3), 704.740, subd. (a), 704.800, subd. (a)].)[3] In light of these facts, *Mehrtash* concluded the trial court correctly ruled that no injury was shown to the plaintiff: "Even assuming the allegedly fraudulent conveyance were set aside and the property were hypothetically available to enforce [the] plaintiff's money judgment, it could not be sold without a court order because it is [the debtor's] dwelling, and could not be sold without a minimum bid equal to all encumbrances and senior liens plus the homestead exemption. [Citations.] [The p]laintiff produced no evidence that the value of the property could support any net recovery for her in the event the conveyance were set aside." (*Mehrtash, supra*, at p. 81.)

## C. *Trial Court's Denial of the UFTA Claim*

Here, the trial court expressly followed the *Mehrtash* decision in concluding that Fidelity's cause of action under the UFTA failed. The trial court reasoned that even if the transfer were set aside, a court-ordered sale of the Fresno property would not satisfy any portion of the judgment; therefore, no

---

[2] There was also testimony in the lower court in *Mehrtash* that the actual purchase price was $551,000.

[3] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

injury was shown. The facts relevant to the trial court's analysis were not in dispute. After deducting the amount owed on the existing encumbrance, the total equity in the Fresno property was $18,835.94, and thus Gordon's one-half share of that equity was only $9,417.97. The trial court held this minimal equity could not be reached by Fidelity because it did not exceed Gordon's homestead exemption of $50,000 under section 704.730. The trial court concluded, "[t]he undisputed evidence demonstrates that Fidelity Title was not injured by the fraudulent transfer since Gordon's transfer of his interest in the Property to Toni did not put beyond Fidelity's reach property that could satisfy a portion of the Judgment owed by Gordon."

Fidelity argues the trial court should not have applied the automatic homestead exemption to its evaluation of the UFTA claim. In support of its position, Fidelity cites *Reddy v. Gonzalez* (1992) 8 Cal.App.4th 118 [10 Cal.Rptr.2d 55, 10 Cal.Rptr.2d 58] (*Reddy*). In that case, the defendant transferred his one-half interest in his home to his wife for the purpose of shielding the property from the plaintiff, a judgment creditor. The plaintiff sued to set aside the transfer as a fraudulent conveyance under the UFTA, and the trial court granted that relief. On appeal, the defendant claimed that his transfer to his wife could not have been fraudulent because the property was subject to a homestead exemption. That is, the defendant argued "[the] plaintiff would have been unable to obtain satisfaction of his judgment from the sale of the residence due to application of the homestead exemption and hence the conveyance did not shield any asset from creditors." (*Reddy, supra*, at p. 121.) The case did not involve a declared homestead exemption pursuant to sections 704.910 through 704.995. Rather, as here, the defendant relied solely on the automatic homestead exemption provided at sections 704.710 through 704.850.[4] (We shall explore the two types of homestead exemptions presently below.) The Court of Appeal upheld the trial court's judgment granting relief under the UFTA because, unlike the former law relating to *declared* homesteads, the automatic homestead exemption did not insulate the homestead property from attachment of judgment liens or from a court-ordered sale. (*Reddy, supra*, at pp. 121–122.) Therefore, a transfer of such property with intent to shield it from creditors is a fraudulent conveyance. (*Id.* at p. 122.)

As highlighted in *Reddy*, there are significant differences between the protections afforded by a declared homestead exemption and an automatic

---

[4] It is referred to as the "automatic" homestead exemption because it applies even if no homestead declaration has been recorded, although the court must still make a determination that the property has been used as the party's principal dwelling. (*Webb v. Trippet* (1991) 235 Cal.App.3d 647, 650–651 [286 Cal.Rptr. 742] ["An automatic residential exemption applies when a party has continuously resided in a dwelling from the time that a creditor's lien attaches until a court's determination that the exemption applies."]; §§ 704.710, subd. (c), 704.780.)

homestead exemption. Under pre-1982 law, a declared homestead effectively shielded the dwelling from the reach of judgment creditors; no judgment lien could attach, even if there was surplus equity. (*Smith v. James A. Merrill, Inc.* (1998) 64 Cal.App.4th 94, 99 [75 Cal.Rptr.2d 108]; *Engelman v. Gordon* (1978) 82 Cal.App.3d 174 [146 Cal.Rptr. 835]; *Swearingen v. Byrne* (1977) 67 Cal.App.3d 580, 584–586 [136 Cal.Rptr. 736].) The only means for a judgment creditor to reach the surplus equity above the amount of the declared homestead (and prior encumbrances) was by levy of writ of execution. (*Smith v. James A. Merrill, Inc., supra*, at p. 99.) Since a declared homestead was beyond the reach of creditors' judgment liens (i.e., no such lien could attach), a transfer of the homestead property was not a fraudulent conveyance. (*Montgomery v. Bullock* (1938) 11 Cal.2d 58, 62–63 [77 P.2d 846].) Current law continues to protect declared homesteads from judgment liens (see §§ 704.950, 697.340; 8 Witkin, Cal. Procedure (5th ed. 2008) Enforcement of Judgment, § 229, p. 257), with the exception that a judgment lien may now attach to a declared homestead in the amount of any *surplus* over the total of prior liens and encumbrances plus the amount of the homestead exemption. (§ 704.950, subd. (c); *Smith v. James A. Merrill, Inc., supra*, at p. 99.)

■ In contrast, the automatic homestead exemption does not prevent the attachment of judgment liens against a dwelling (*Reddy, supra*, 8 Cal.App.4th at pp. 121–122), but affords protection when a judgment creditor seeks a court-ordered sale of the dwelling after a notice of levy. (See §§ 704.740–704.800; *Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 589 [5 Cal.Rptr.3d 224] ["the automatic homestead only entitles the debtor to protection from a forced execution sale"].)[5] A hearing is held at that time to confirm whether the dwelling is exempt as a homestead, and to determine the amount of the exemption and the fair market value of the property. (§ 704.780, subd. (b).) At the hearing, the court will order the sale of the dwelling, subject to the homestead exemption, "unless the court determines that the sale of the dwelling would not be likely to produce a bid sufficient to satisfy any part of the amount due on the judgment pursuant to Section 704.800." (§ 704.780, subd. (b).) Under section 704.800, unless a bid exceeds the amount of the homestead exemption plus all liens and encumbrances on the property, "the homestead shall not be sold and shall be released and is not thereafter subject to a court order for sale upon subsequent application by the same judgment creditor for a period of one year." (§ 704.800, subd. (a); see *Rourke v. Troy* (1993) 17 Cal.App.4th 880, 886 [21 Cal.Rptr.2d 660], fn. omitted ["The bid

---

[5] This court-ordered sale process must be followed to force a sale of a dwelling to enforce a money judgment. Section 704.740, subdivision (a), provides: "[T]he interest of a natural person in a dwelling may not be sold under this division to enforce a money judgment except pursuant to a court order for sale obtained under this article and the dwelling exemption shall be determined under this article."

must exceed the amount of the homestead and the balance due on the deed of trust, and after [the] defendant's wife receives her share, there must be some amount remaining to partially satisfy [the] plaintiffs' judgments."].)[6]

Fidelity argues, based on *Reddy*, that since a lien securing its judgment would have attached to the Fresno property but for the fraudulent conveyance, Fidelity was prejudiced by that conveyance, even though it could not have immediately forced a sale of the property that would have resulted in satisfaction of any portion of the judgment. Fidelity notes that if its judgment lien had attached, Fidelity could have waited for the property to appreciate in value before seeking a court-ordered sale. Gordon counters, based on *Mehrtash*, that unless the transfer puts beyond reach property that Fidelity could presently subject to payment of the debt (i.e., in a court-ordered sale), there is no injury under the UFTA, and further, that Fidelity cannot show the transfer resulted in injury by speculating about possible future appreciation. We conclude that Gordon's position is the correct one.

First, *Mehrtash* rightly affirmed the long-standing principle that injury in fact is an essential element of a claim under the UFTA (*Mehrtash, supra*, 93 Cal.App.4th at p. 80), and we follow that principle in the present case. A creditor has not been injured unless the transfer puts beyond reach property the creditor *could subject to payment of his or her debt*. (*Ibid.*; *Haskins v. Certified Escrow & Mtge. Co.* (1950) 96 Cal.App.2d 688, 691 [216 P.2d 90].) The trial court below correctly held there was no injury to Fidelity because a court-ordered sale of the Fresno property would not have satisfied any portion of the judgment. Moreover, we reject Fidelity's position that the injury element may be determined based on speculation about possible future appreciation of the property.

■ Second, the injury requirement is built into the express terms of the UFTA, which not only requires that we exclude prior encumbrances from the definition of "asset" (for the purpose of determining if a fraudulent transfer of an asset occurred), but also property "to the extent it is generally *exempt* under nonbankruptcy law." (Civ. Code, § 3439.01, subd. (a)(1), (2), italics added.)[7] We believe the automatic homestead protection *is* such an exemption. The automatic homestead exemption and the declared homestead exemption are contained in the chapter of the enforcement of judgment law that specifically addresses exemptions. (See pt. 2, tit. 9, div. 2, ch. 4 of Code Civ.

---

[6] There are several other differences between a declared homestead and an automatic homestead, but they are not relevant to the issues in this appeal. (See *Amin v. Khazindar, supra*, 112 Cal.App.4th at p. 589 [comparing the two types of homestead exemptions].)

[7] The term "generally exempt" is merely a recognition that all exemptions are subject to exceptions. (See Legis. Com. com., 12A West's Ann. Civ. Code (1997 ed.) foll. § 3439.01, p. 273.)

Proc., including §§ 703.010–704.995.) Section 703.010, subdivision (a), states the rule that unless otherwise provided by statute, "[t]he exemptions provided by this chapter or by any other statute apply to all procedures for enforcement of a money judgment." In section 704.720, pertaining to homestead exemptions (including the automatic homestead exemption), it clearly states that "[a] homestead is *exempt* from sale under this division [the enforcement of judgment law] to the extent provided in Section 704.800." (§ 704.720, subd. (a), italics added.) Thus, the Legislature has plainly categorized the automatic homestead protection as an exemption.[8] We conclude that in the UFTA definition of what constitutes an "asset," the exclusion therein of "exempt" property was intended to include the exemption applicable to a dwelling under the automatic homestead exemption. Accordingly, the trial court correctly applied the law when it considered the automatic homestead exemption in evaluating Fidelity's claim under the UFTA.[9]

We reject Fidelity's contention that the holding in *Reddy* precluded the trial court in the instant case from considering the automatic homestead exemption on the issue of whether any injury occurred for purposes of Fidelity's claim under the UFTA. *Reddy* accurately observed that a judgment lien attaches against a debtor's residential property notwithstanding the automatic homestead exemption, and that a judgment creditor may apply for a forced sale of the property. In these respects, as *Reddy* acknowledged, the dwelling is not insulated from creditors as was largely the case under the former declared homestead law, and thus a transfer of such dwelling is subject to being set aside as a fraudulent conveyance under the UFTA. However, *Reddy* did not directly address the issue of injury in fact or the definition of "asset" in the UFTA, which excludes exempt property. "[C]ases are not authority for propositions not considered therein." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 372 [20 Cal.Rptr.2d 330, 853 P.2d 496].) In any event, to the extent *Reddy* may be read as holding that the automatic homestead exemption *cannot* be considered in connection with determining whether there was injury or whether an "asset" was transferred, we respectfully disagree.

---

[8] It operates as an exemption by preventing a judgment creditor from satisfying any portion of his or her judgment against the property unless, in a court-ordered sale process, there is surplus value exceeding the amount of the homestead exemption set forth at section 704.730 plus all prior liens and encumbrances. (§ 704.800.)

[9] We note that we are required to give liberal application to the homestead protections. " 'Homestead laws are designed to protect the sanctity of the family home against a loss caused by a forced sale by creditors . . . . This strong public policy requires courts to adopt a liberal construction of the law and facts to promote the beneficial purposes of the homestead legislation to benefit the debtor. [Citations.]' " (*Title Trust Deed Service Co. v. Pearson* (2005) 132 Cal.App.4th 168, 174 [33 Cal.Rptr.3d 311].)

■ Rather, we reiterate and adopt the following language of the *Mehrtash* opinion: "Even assuming the allegedly fraudulent conveyance were set aside and the property were hypothetically available to enforce [the] plaintiff's money judgment, it could not be sold without a court order because it is [the debtor's] dwelling, and could not be sold without a minimum bid equal to all encumbrances and senior liens plus the homestead exemption. [Citations.] [The p]laintiff produced no evidence that the value of the property could support any net recovery for her in the event the conveyance were set aside." (*Mehrtash, supra*, 93 Cal.App.4th at p. 81.)[10] Here, likewise, the evidence at trial showed that Fidelity could not have obtained any net recovery if the transfer were set aside and a forced sale of the property was sought.[11]

We conclude that the trial court applied the correct legal standard, its decision was supported by the evidence, and no error has been shown. The trial court's conclusion that Fidelity had no right to set aside the transfer under the UFTA is accordingly affirmed.

## II. *The Resulting Trust Cause of Action*

Fidelity also claims the trial court erred in denying relief under the resulting trust cause of action. We begin with a brief summary of the nature of a resulting trust.

■ "A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest. [Citations.] Such a resulting trust carries out and enforces the inferred intent of the parties. [Citations.]" (*Lloyds Bank California v. Wells Fargo Bank* (1986) 187 Cal.App.3d 1038, 1042–1043 [232

---

[10] Fidelity argues the reference in *Mehrtash* to the homestead exemption was unnecessary to the court's opinion since the prior liens and encumbrances in that case apparently exceeded the property's value. We think the appellate court was entitled to base its decision on a consideration of all the factors bearing on the existence of injury, which would arguably include the prior liens and encumbrances *and* the homestead exemption. But even if the reference to the homestead exemption may have been *dicta*, we adopt the above quoted language because it represents a correct statement of the law.

[11] At oral argument, Fidelity's counsel asserted in his closing comments that the homestead exemption did not apply because the underlying judgment that was assigned to Fidelity was for spousal support. We do not address the merits of that contention, since it was never raised or argued in appellant's opening brief. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457] [issues not properly raised in opening brief are deemed forfeited or abandoned]; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 [43 Cal.Rptr.3d 148] [same].) We note further that Fidelity's appeal does not call into question the trial court's determination that the Fresno property was, at all relevant times, Gordon's dwelling and qualified as a homestead.

Cal.Rptr. 339].) "It has been termed an 'intention-enforcing' trust, to distinguish it from the other type of implied trust, the constructive or 'fraud-rectifying' trust. The resulting trust carries out the inferred intent of the parties; the constructive trust defeats or prevents the wrongful act of one of them." (13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 311, p. 885; see also *Calistoga Civic Club v. City of Calistoga* (1983) 143 Cal.App.3d 111, 117–118 [191 Cal.Rptr. 571] [a resulting trust is, like the constructive trust, a "creature of equity"].) It differs from an express trust in that it arises by operation of law, from the particular facts and circumstances, and thus it is not essential to prove an express or written agreement to enforce such a trust. (13 Witkin, *supra*, § 311, p. 885; 60 Cal.Jur.3d (2005) Trusts, § 315, p. 431.) The trustee has no duties to perform, no trust to administer and no purpose to carry out except the single task of holding onto or conveying the property to the beneficiary. (*Bainbridge v. Stoner* (1940) 16 Cal.2d 423, 428 [106 P.2d 423], citing *Fulton v. Jansen* (1893) 99 Cal. 587 [34 P. 331], Rest., Trusts, § 404, Bogert on Trusts & Trustees, § 451.)

Here, Fidelity's complaint alleged that Gordon's conveyance of the Fresno property to Toni was intended only as a transfer of legal title, which she held as trustee for Gordon, and that Gordon retained his equitable one-half interest in the property. Following trial of the case, the trial court rejected Fidelity's resulting trust theory solely on *legal* grounds, not on factual grounds.[12] Specifically, the trial court ruled that because Fidelity did not claim it was entitled to a one-half interest in the property but only sought to impose a judgment lien on Gordon's alleged one-half interest in the property, Fidelity failed to state a cause of action for a resulting trust. Since the trial court denied the resulting trust cause of action on said legal grounds, it did not make factual findings regarding Gordon's and Toni's intent with respect to legal and equitable title for purposes of the alleged resulting trust.

Fidelity contends the trial court's legal conclusion barring relief was in error. Fidelity points out that a judgment lien attaches to all interests in real property, including equitable interests (§ 697.340, subd. (a)), and therefore the trial court should have recognized under a resulting trust theory that Gordon

---

[12] For this reason, we reject Gordon's contention that Fidelity waived its right to object to the grounds for denial of the resulting trust cause of action as set forth in the trial court's statement of decision. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59 [58 Cal.Rptr.3d 225] ["a party does not waive objections to legal errors appearing on the face of the statement of decision by failing to respond to it"].) We also reject Gordon's contention that Fidelity abandoned its resulting trust cause of action by its counsel's brief comment, during closing argument, to the effect that the case is "more about a constructive trust" than a resulting trust. The remark does not clearly reflect an intention to abandon the cause of action. (See *Ukiah v. Fones* (1966) 64 Cal.2d 104, 107–108 [48 Cal.Rptr. 865, 410 P.2d 369] [party claiming waiver must show it was clearly intended].)

retained an equitable interest in the Fresno property, thereby allowing Fidelity's abstract of judgment recorded on October 10, 2007, to attach as a lien against Gordon's equitable interest.

As support for the legal viability of its position, Fidelity relies on *Valente, supra*, 360 F.3d 256, a federal court of appeals decision that carefully analyzed the doctrine of resulting trust under Rhode Island common law and held that a creditor may pursue a resulting trust theory (in the manner suggested by Fidelity) as a form of common law equitable relief that would supplement the state's UFTA. (*Valente, supra*, at pp. 262–263.) *Valente* gave legal effect to the inferred intent of the debtor (as transferor) and his son (as transferee) by declaring under a "resulting trust" analysis that the debtor retained his equitable interest in the property, thus the creditor's prior execution lien was deemed to have attached to the debtor's equitable interest. (*Id.* at p. 264.) In effect, the creditor was allowed to step into the debtor's shoes for the purpose of establishing the existence of a resulting trust in order to allow the creditor's execution lien to attach to the debtor's equitable interest in the property. "The equitable interest found by the courts in these cases sufficed to provide the creditors relief from the debtors' fraudulent attempts to avoid attachment." (*Id.* at p. 263.)

■ California recognizes that common law causes of action are not preempted by the UFTA and remain available remedies. (Civ. Code, § 3439.10; *Macedo v. Bosio* (2001) 86 Cal.App.4th 1044, 1051 [104 Cal.Rptr.2d 1].) Although no published California decision has cited *Valente*, we believe the approach taken in *Valente* is consistent with California law and applicable in the instant case. ■ As pointed out by Fidelity, California law provides that a judgment lien attaches to *all* interests in real property, including *equitable* interests. (§ 697.340, subd. (a).)[13] ■ Also, under established common law in this state, a resulting trust may arise from a transfer of property under circumstances showing that the transferee was not intended to take the equitable or beneficial interest. (*Lloyds Bank California v. Wells Fargo Bank, supra*, 187 Cal.App.3d at pp. 1042–1043.) Thus, allowing a judgment creditor to maintain a resulting trust cause of action in a case such as this one would merely apply a recognized legal and factual basis for concluding that the debtor actually retained an equitable interest to which a judgment lien may attach. Further, we note that a judgment creditor's use of a resulting trust model as a basis for pursuing assets transferred by a debtor is

---

[13] We are aware that section 697.340, subdivision (a), states that a judgment lien does not reach "the interest of a beneficiary under a trust." Instead, section 709.010, subdivision (b), provides the mechanism for enforcement of a money judgment against a trust. However, the term "trust" as used in these provisions is defined by reference to Probate Code section 82 (§ 709.010, subd. (a)), which excludes a resulting trust from the definition of the term "trust." Therefore, a judgment lien *would* attach to the equitable interest retained by the beneficiary of a resulting trust.

not altogether novel in California case law. In *Altramano v. Swan* (1942) 20 Cal.2d 622 [128 P.2d 353], a case that involved a judgment creditor's action to impress a lien on certain property, the Supreme Court assumed in its discussion of the causes of action that the creditor could appropriately raise, under a resulting trust theory, the issue of whether a debtor retained an equitable interest in the property. (*Id.* at p. 628 [addressing merits of creditor's claim of resulting trust].)

 Finally, the analysis set forth in *Valente* is reasonable and persuasive, and we believe it is appropriate to be guided by it in this case where the equities are essentially the same. Here, as in *Valente*, the fact that the transfer could not be set aside under the UFTA, notwithstanding the debtor's intent to defraud his creditor, does not mean that the creditor is without a remedy under the common law or equity. Moreover, as the law provides that judgment creditors of the beneficiary of an *express* trust may reach his or her interests in that trust, albeit by means of a special enforcement procedure (see § 709.010 [applicable to trusts as defined in Prob. Code, § 82, which does not include resulting trusts]),[14] it is consistent with existing law to hold that judgment creditors of the beneficiary of a *resulting* trust may reach his or her equitable interest in the resulting trust to a similar extent. (See Rest.2d Trusts, § 407, com. f, p. 329.) Allowing the judgment creditor to assert a resulting trust cause of action in this context would simply provide the mechanism for doing so under a well-established legal theory. In view of these several considerations, we apply the maxim of jurisprudence that "[f]or every wrong there is a remedy" (Civ. Code, § 3523) and hold that Fidelity stated a cause of action for a resulting trust.

 We conclude that the trial court erred in stating that "because there is no claim that Fidelity is entitled to claim a one-half interest *in* the Property (as opposed to a judgment lien on one-half), . . . the Fourth Cause of Action for a resulting trust as against Toni Schroeder fail[s]." Fidelity may seek to reach Gordon's retained equitable interest, if any, under a resulting trust theory, and if Fidelity prevails thereon, its judgment lien will attach effective on the date its abstract of judgment was recorded. We remand the matter to the trial court to make a determination whether Fidelity has proven (or can prove) that Toni holds Gordon's one-half ownership in this property in trust for Gordon under a resulting trust theory, with Gordon retaining his equitable interest.[15] We leave to the discretion of the trial court whether the parties may introduce additional evidence on this issue.

---

[14] Where an express trust is involved, the relief granted by the court in the enforcement proceeding may include impressing the beneficiary's interest in the trust property with a lien. (§ 709.010, subd. (b).)

[15] Of course, if the trial court finds Gordon made an outright gift of the property (i.e., no beneficial or reversionary interest was retained), the resulting trust cause of action will fail.

## DISPOSITION

That part of the judgment relating to the resulting trust cause of action is reversed and remanded to the trial court for further proceedings. The balance of the judgment is affirmed. Each party to bear their own costs on appeal.

Ardaiz, P. J., and Levy, J., concurred.