Filed 1/21/15  Favila v. Souther CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SANDRA CORRALES FAVILA, as Executor, etc., et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>RALEIGH SOUTHER et al.,<br><br>    Defendants and Appellants. | B253740<br><br>(Los Angeles County<br>Super. Ct. No. BC379462) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deirdre Hill, Judge.  Affirmed as modified.

Law Offices of Carlos F. Negrete and Carlos F. Negrete for Defendants and Appellants.

James K. Cameron & Associates, James K. Cameron; Law Offices of Gary R. Wallace and Gary R. Wallace, for Plaintiffs and Respondents.

_____

Raleigh Souther appeals from an amended judgment, entered following remand by this court in *Sandra Corrales Favila, as Executor etc. v. Souther* (Oct. 23, 2012, B230264) (nonpub. opn.) (*Souther I*), awarding the Estate of Richard Corrales (Estate), through its executor Sandra Corrales Favila, $1,169,514 in compensatory damages for lost income generated by the use of assets of Motion Graphix, Inc. that had been wrongfully transferred by Souther to Get Flipped, Inc., as well as $2,125,238.70 in punitive damages, and imposing a constructive trust in favor of the Estate and against Souther and Get Flipped on all the assets of Motion Graphix transferred to Get Flipped.

On appeal Souther contends, having elected imposition of a constructive trust as a remedy for the misappropriation of the Motion Graphix assets, the Estate is not entitled to any award of compensatory damages with respect to those assets. In addition, Souther contends the constructive trust imposed by the trial court improperly applies to 100 percent of the assets of Motion Graphix wrongfully transferred to Get Flipped, rather than just the 51 percent to which the Estate is entitled. We disagree with Souther's first point, but agree (as does the Estate) with the second. Accordingly, we modify the judgment to limit the reach of the constructive trust and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

The history of the business relationship between Souther and Richard Corrales, a photographer and inventor, their joint founding and operation of Motion Graphix, and the two men's ultimate estrangement, including Souther's creation of Get Flipped (wholly owned by Souther and his wife) and the sale of Motion Graphix's assets, including its intellectual property, to the new company is detailed in *Souther I.* As we discussed, in a complaint filed in October 2007 against Souther and Get Flipped, the Estate alleged Corrales still owned 51 percent of the shares of Motion Graphix when he died in November 2005; those shares passed to the Estate; the Estate never approved Souther's February 2007 sale of Motion Graphix's assets to Get Flipped or the March 2007 dissolution of Motion Graphix; the fair market value of Motion Graphix's intellectual property was between $8 and $12 million; and Souther had engaged in various acts of

2

wrongdoing by orchestrating the fraudulent and unauthorized sale of Motion Graphix's assets to Get Flipped for $5,000.

At the bench trial ultimately held in the matter the Estate presented the opinion testimony of certified public accountant Michael Sovik to support its damage claims. Sovik testified his computation of damages in the event Souther and Get Flipped were found liable for improperly transferring and utilizing Motion Graphix's assets had two basic elements: a valuation of the ongoing business itself (what he referred to as the "fair value" of the company) and a calculation of the income generated by the business from which Corrales and the Estate had been excluded. Based on his review of financial records and tax returns for Motion Graphix, Get Flipped and Souther from 2004 and 2008, Sovik opined the Estate was entitled to compensatory damages of $1,700,191, comprised of 51 percent of the net income that Souther had diverted from Motion Graphix to Get Flipped plus 10 percent interest ($1,169,514) and 51 percent of a four-year average fair value derived by applying a multiple of four to Motion Graphix and Get Flipped's earnings before interest, tax, depreciation and amortization, discounted by 25 percent for the lack of marketability of Motion Graphix ($530,677). Sovik's calculation of diverted net income included salaries paid to Souther and his wife, rent for office space and business expenses that exceeded the amount paid by Motion Graphix in 2004.

At the conclusion of the lengthy trial, the court found in favor of the Estate on its claims for breach of contract, conversion, fraud and breach of fiduciary duty and awarded it $4,003,311.70 in damages: $1,700,191 in compensatory damages, which included both the value of the Estate's interest in the wrongfully transferred assets of Motion Graphix and the Estate's share of the income generated by those assets from which it had been excluded; $2,125,238.70 in punitive damages; and $177,882 in prejudgment interest. The court also imposed both a constructive trust and resulting trust in favor of the Estate on all the Motion Graphix assets fraudulently transferred to Get Flipped including computer equipment, software code, trademarks, copyrights and license agreements.

3

In *Souther I* we rejected Souther's contentions, among others, that the Estate lacked standing to assert a direct action because its injury, devaluation of its shares in Motion Graphix, was only incidental to the injury to the company itself; Sovik was not qualified to offer his valuation opinion; the court's legal rulings and factual findings were not supported by substantial evidence; and punitive damages were improperly awarded. However, we agreed with Souther that the trial court had erroneously imposed a constructive/resulting trust on 100 percent of the assets improperly transferred to Get Flipped, rather than 51 percent. In addition, we held the Estate was not entitled to both damages to compensate it for the improper transfer of assets to Get Flipped and a constructive trust on those same assets: The Estate was required to elect its remedy.[1] Accordingly, we remanded the matter for further proceedings, directing the trial court to determine whether the Estate had already elected imposition of a constructive trust, rather than compensatory damages, for the wrongful acquisition of its assets, as Souther and Get Flipped had argued; and instructing the trial court, if the Estate had so elected or if it subsequently chose that equitable remedy, to allocate only 51 percent, not 100 percent, of the assets to the Estate.

Following additional briefing and oral argument, on November 14, 2013 the trial court entered an amended judgment that reduced the compensatory damage award by $530,677, the valuation of the Estate's 51 percent interest in the assets wrongfully transferred to Get Flipped (with a corresponding reduction in the amount of prejudgment interest awarded), eliminated the resulting trust at the request of the Estate, and imposed a constructive trust on all assets of Motion Graphix held by Get Flipped. There was no change in the punitive damage award. The amended judgment also maintained the

---

[1] We also briefly discussed the difference between a constructive and resulting trust and explained why imposition of a resulting trust was not an appropriate equitable remedy in this case. (See *Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 848 ["'[t]he resulting trust carries out the inferred intent of the parties; the constructive trust defeats or prevents the wrongful act of one of them'"].)

4

previously awarded sums for attorney fees and costs of suit.  Souther filed a timely notice of appeal.[2]

## DISCUSSION

1. *The Trial Court Did Not Err in Both Awarding Damages for the Estate's Loss of Improperly Transferred Assets and Imposing a Constructive Trust over Those Assets*

Although his appellant's opening brief is not a model of clarity and no reply brief was filed, Souther appears to challenge the amended judgment's award of compensatory damages on two related grounds:  First, in *Souther I* we held the Estate was entitled to either compensatory damages based on Souther and Get Flipped's misappropriation of Motion Graphix's assets or imposition of a constructive trust, but not both.  Second, whatever we may have said in *Souther I*, as a matter of governing California law, having elected imposition of a constructive trust, the Estate is not entitled to any award of compensatory damages.  Neither argument has merit.

a. *The amended judgment is consistent with the remand order in* Souther I

In *Souther I* we carefully explained the damages claimed by the Estate as a result of the misappropriation of Motion Graphis's assets had two aspects:  Sovik's valuation of Motion Graphix (or its assets) as an ongoing business and his determination of lost income as a result of Souther's exclusion of Corrales and the Estate from the business during the relevant time period.  The trial court accepted Sovik's testimony and awarded compensatory damages for both damage elements in the precise sums he had calculated.

In addressing the problem of double recovery in *Souther I*, we focused solely on the valuation component of that compensatory damage award:  "After obtaining an award of compensatory damages predicated in part on its loss of a 51 percent interest in the value of Motion Graphix, it would be an improper windfall (a double recovery) to the Estate to also receive the assets themselves."  Thus, we instructed the trial court that the

---

[2]   Although a defendant in the trial court proceedings, Get Flipped has abandoned its appeal from the amended judgment because of its status as a suspended corporation.

Estate would have to elect (if it had not already done so)[3] between "damages for the value of the wrongfully transferred assets" and imposition of a constructive trust on those same assets.  The trial court properly read our opinion in *Souther I* to permit the imposition of a constructive trust to effect a return of the unlawfully transferred assets and also an award of incidental or consequential damages for the Estate's loss of use of those assets while under Souther and Get Flipped's control.

> b. *It was proper for the trial court both to impose a constructive trust on the assets Souther had misappropriated from Motion Graphix and to award consequential damages for the Estate's lost income during the period Souther and Get Flipped held and used the misappropriated assets*

"The purpose of the constructive trust remedy is to prevent unjust enrichment and to prevent a person from taking advantage of his own wrong."  (*Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119, 135.)  Because it would otherwise unfairly "reward the defendant for his wrongdoing," a plaintiff entitled to imposition of a constructive trust may recover not only the property improperly acquired but also the profits earned by the defendant from the use of that property.  (*Ibid.*; see Civ. Code, § 1692 [claim for damages not inconsistent with equitable claim for rescission; "[t]he aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery"]; Rest.3d Restitution and Unjust Enrichment, § 55, Restitution via Rights in Identifiable Property, comment *l*, p. 315 ["[i]f the defendant has had possession of the constructive trust property for any length of time, the defendant may be liable for rent or another measure of use value, subject to credits for taxes or similar expenses paid by the defendant"].)

The net income lost by the Estate while Get Flipped wrongfully held and used Motion Graphix's intellectual property and other assets (that is, 51 percent of Get

---

[3]     Souther has argued throughout these proceedings that the Estate impliedly elected imposition of a constructive trust, rather than an award of damages, by seeking to recover the Motion Grahix assets held by Get Flipped.  Given the Estate's express election of the constructive trust remedy on remand, that issue is moot.

Flipped's net income during the relevant period) was properly considered by the trial court as an item of incidental or consequential damages separate from the current value of the assets themselves. While the constructive trust imposed by the court duplicated the award of damages for the fair value of those assets—a plaintiff is not entitled both to "sell" the assets to the defendant and to recover the same assets from it—that equitable device, standing alone, did not provide for any recovery of the income lost while Souther maintained those assets. Having established Souther's liability for wrongfully transferring Motion Graphix's assets, the Estate was entitled to complete relief, including an award of incidental damages. (*Meister v. Mensinger* (2014) 230 Cal.App.4th 381, 396 ["'[w]here a breach of fiduciary duty occurs, a variety of equitable remedies are available, including imposition of a constructive trust, rescission, and restitution, as well as incidental damages'"]; *Hicks v. Clayton* (1977) 67 Cal.App.3d 251, 264 [same]; cf. *Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 417 ["the primary purpose of compensatory damages is . . . to make plaintiffs whole"]; *Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1153 ["[t]he purpose of compensatory damages is to make plaintiffs whole for harm caused by defendants"].)

2. *The Trial Court Improperly Imposed the Constructive Trust over All of Get Flipped's Assets*

We held in *Souther I* that a constructive trust could properly apply only to 51 percent of the assets improperly transferred by Souther from Motion Graphix to Get Flipped. As we stated, "There is simply no basis for the court's finding all the wrongfully acquired assets should be awarded to the Estate." (*Souther I*, *supra*, at fn. 24.) Nonetheless, the amended judgment makes the same error, imposing a constructive trust "on all of the assets of [Motion Graphix[4]] that Souther and [Get Flipped] fraudulently transferred to [Get Flipped] . . . ."

---

[4] The amended judgment actually refers to "all of the assets of GFI that Souther and GFI fraudulently transferred to GFI . . . ." The first reference to GFI—the abbreviation for Get Flipped, Inc. used by the trial court—was obviously an error since all parties

The Estate acknowledges this error, as it must, and has consented in its respondent's brief to a modification of the amended judgment "to insert '51% of' prior to 'all'" in the appropriate place in the amended judgment.  Accordingly, we modify the judgment to reflect that amendment.  (See *Meister v. Mensinger, supra,* 230 Cal.App.4th at p. 400 [equitable relief awarded plaintiffs must be reduced to reflect their partial ownership interest].)

## DISPOSITION

The November 14, 2013 amended judgment is modified to reflect that the constructive trust imposed in favor of the Estate and against Souther and Get Flipped covers an undivided 51 percent (not 100 percent) of all the assets of Motion Graphix fraudulently transferred to Get Flipped.  In all other respects the amended judgment is affirmed.  The parties are to bear their own costs on appeal.



PERLUSS, P. J.

We concur:



WOODS, J.



ZELON, J.

---

recognize it was assets originally held by Motion Graphix and transferred to, not from, Get Flipped that are at issue in the lawsuit.