**In re Michael D. MOELLER and Gloria A. Moeller, Debtors.**

**Andrew E. Swimmer, Plaintiff,**

**v.**

**Michael D. Moeller, Defendant.**

**Bankruptcy No. 08–08241–LT7.**

**Adversary No. 11–90207–LT.**

United States Bankruptcy Court, S.D. California.

March 5, 2012.

M. Richardson Lynn, Jr., Wagner, Lynn, and Lujan, San Diego, CA, for Plaintiff.

Randall P. Mroczynski, Cooksey, Howard, Martin & Toolen, Costa Mesa, CA, for Defendant.

## MEMORANDUM DECISION

LAURA S. TAYLOR, Bankruptcy Judge.

Debtor and defendant Michael D. Moeller seeks dismissal of a cause of action seeking a determination that a claim based on an alleged breach of fiduciary duty is nondischargeable under 11 U.S.C. § 523(a)(4).[1] Debtor argues that even if the Court assumes the truth of the facts as set forth in the complaint—that he was an officer or director of an insolvent corporation, that the plaintiff, Andrew E. Swimmer, was a creditor of that corporation, and that he wrongfully diverted funds paid by Plaintiff to the company to his personal use during the company's insolvency—the Court must conclude that these facts do not support section 523(a)(4) exception to discharge relief. The Plaintiff opposes, basing his argument principally on the Ninth Circuit Bankruptcy Appellate Panels' decision in *Nahman v. Jacks (In re Jacks)*, 266 B.R. 728 (9th Cir. BAP 2001). The *Jacks* decision supports Plaintiff's opposition, but the *Jacks* court considered this issue without the benefit of subsequent Ninth Circuit authority and California Court of Appeal analysis of relevant California law. After *Jacks*, the Ninth Circuit in *Cal–Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119 (9th Cir.2003) determined that a corporate principal is not a trustee of an express or statutory trust and, thus, is not a fiduciary to the

corporation and its shareholders for the purposes of the section 523(a)(4) discharge exception. And more recently, in *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App.4th 1020, 100 Cal.Rptr.3d 875 (2009), the California Court of Appeal determined that California recognizes only a limited fiduciary duty owed to creditors by directors of an insolvent corporation. After reviewing the relevant authority, including these *post-Jacks* cases, the Court concludes that it should not follow *Jacks* and that it will grant the motion with prejudice because, under the facts of this case, a section 523(a)(4) exception to discharge is unavailable to the Plaintiff as a matter of law.

## JURISDICTION

Neither party questions this Court's authority to decide this motion as a result of *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). The Court, however, independently evaluates the scope of its power and determines that such authority exists here. Under 28 U.S.C. § 157(b)(1), bankruptcy judges can hear and enter final judgments in core proceedings arising under Title 11 or arising in a bankruptcy case. A case seeking to determine the dischargeability of a creditor's claim is core; it arises under the Bankruptcy Code and can arise only in a bankruptcy case. 28 U.S.C. § 157(b)(2)(I). *See also Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Here, the determination is final only as to a single cause of action. Further, resolution of this motion to dismiss requires assumption of the plausible allegations of the complaint, rather than determinations of fact. Thus, the

---

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

Court determines only the applicability of a Bankruptcy Code's exception to discharge under the facts as set forth in the complaint.[2]

## BACKGROUND

Debtor initiated his chapter 7 case on August 27, 2008 and received his discharge on December 2, 2008. Debtor did not list Plaintiff as a creditor on his schedules. On April 25, 2011, Plaintiff filed the current adversary proceeding, seeking to determine the dischargeability of his claim. This Memorandum Decision follows the Debtor's Motion to Dismiss the Second Cause of Action of Plaintiffs First Amended Complaint (the "Motion") which seeks the dismissal under Federal Rule of Civil Procedure 12(b)(6) ["Civil Rule 12(b)(6)"], as made applicable here by Bankruptcy Rule 7012(b), of the cause of action alleging that a claim arising from the Debtor's alleged breach of fiduciary duty is nondischargeable pursuant to section 523(a)(4).

In the First Amended Complaint (the "Complaint"), Plaintiff alleges that in March 2008, he entered into two contracts with Envision Home Automation Corporation ("Envision"), a California corporation that Debtor and his brother, Mitchell S. Moeller, owned and controlled. The contracts involved Envision's installation of lighting, audio, and video systems throughout Plaintiff's residence. Plaintiff alleges that he tendered over $83,000 to Envision, but that Envision failed to complete installation of the systems. Plaintiff further alleges that even as Debtor and his brother assured him that work under the contracts continued successfully, Envision was or became insolvent and ceased doing business. He finally alleges that Debtor took the proceeds of a check or checks written to Envision and converted them to his own use. Plaintiff alleges that through these actions Debtor damaged him, as he never obtained completed lighting, audio, and video systems. It also alleges that a proposed new contractor was unwilling to assume the Envision contracts as it would require him to "eat" over $43,000 and the cost of bringing in another contractor to complete the work, at an additional cost of approximately $100,000, was prohibitively expensive given that he paid over $83,000 to Envision.

Plaintiff asserts that these facts give rise to nondischargeable claims under various theories. The Motion seeks to dismiss only the cause of action based on an alleged breach of fiduciary duty and section 523(a)(4).[3]

## STANDARDS

A motion to dismiss under Civil Rule 12(b)(6) challenges the sufficiency of the allegations set forth in the complaint and "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir.2008) (citation and internal quotation marks omitted). The Court's review is limited to the allegations of material facts set

---

**2.** If either of the parties successfully challenges this Court's authority to enter a final judgment in this case, this Memorandum Decision will serve as this Court's proposed conclusions of law. The Court emphasizes that any party challenging this Court's authority must timely comply with Rule 9033 and must seek *de novo* review from the District Court.

**3.** The Court finds the timeline in this case confusing. Certain alleged actions occurred,

at least in part, post-petition. Neither party discussed this issue, however, and this matter arises in the context of a motion to dismiss where the Court must assume the truth of the allegations of the Complaint and does not have the benefit of a full development of the factual record. The Court, thus, expressly limits its determinations here as to claims that are subject to discharge in Debtor's chapter 7 case.

forth in the complaint, which must be read in the light most favorable to the non-moving party (here, the Plaintiff) and, together with all reasonable inferences therefrom, must be taken to be true. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). In practice, however, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citation and internal quotation marks omitted). The plaintiff, thus, must provide grounds for an entitlement for relief, which requires more than labels and conclusions, and, again, the actions must be based on legally cognizable rights of action. *Id.* at 555, 127 S.Ct. 1955. If a complaint seeks a recovery that is barred as a matter of law, the complaint is subject to dismissal. *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

■■■ A creditor objecting to the dischargeability of its claim bears the burden of proving, by a preponderance of the evidence, that the particular debt falls within one of the exceptions to discharge enumerated in section 523(a). *Grogan*, 498 U.S. at 286–291, 111 S.Ct. 654. This allocation of the burden of proof is appropriate; "[o]ne of the fundamental policies of the Bankruptcy Code is the fresh start afforded debtors through the discharge of their debts." *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir.1992) (citation omitted). Thus, and in order to effectuate the fresh start policy, exceptions to discharge must be strictly construed against an objecting creditor and in favor of the debtor. *Id.*

Section 523(a)(4) of the Bankruptcy Code provides as follows:

Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny[.]

11 U.S.C. § 523(a)(4).

■■■ A creditor must establish three elements to render a claim nondischargeable under section 523(a)(4): (1) an express (or technical) trust; (2) that the debt was caused by fraud or defalcation; and (3) that the debtor was a fiduciary to the creditor at the time the debt was created. *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir.1997); *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir.1996). Thus, the threshold issues presented by the facts of this case are whether the Debtor, as an officer or director of Envision, owed a fiduciary duty to the Plaintiff, a creditor of Envision, and whether such a duty arises in connection with an express or technical trust.

## DISCUSSION

### A. Not All Breaches Of Fiduciary Duty Result In A Nondischargeable Debt Under 523(a)(4).

■■■ Prior case law makes clear that the broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context. *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986). Instead, section 523(a)(4) nondischargeability results only where, among other things, the fiduciary relationship between the debtor and the creditor arises in relation to an express or technical trust that predates the alleged defalcation. *Lewis*, 97 F.3d at 1185; *Runnion v. Pedrazzini (In re Pedrazzini)*, 644 F.2d 756, 758 (9th Cir. 1981). In short, under section 523(a)(4), it "is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become

chargeable as a trustee *ex maleficio."* *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Honkanen v. Hopper (In re Honkanen),* 446 B.R. 373, 378–379 (9th Cir. BAP 2011). Thus, section 523(a)(4) does not render a claim nondischargeable where the fiduciary duty pre-dates the defalcation, and the only trust is a constructive, resulting, or implied trust that arises only after the defalcation. *Blyler v. Hemmeter (In re Hemmeter),* 242 F.3d 1186, 1189–90 (9th Cir.2001). Whether the debtor was acting in a fiduciary capacity within the meaning of section 523(a)(4) is a question of federal law. *Lewis,* 97 F.3d at 1185. State law, however, determines whether the requisite trust relationship exists. *Id.*

Plaintiff contends that the Debtor owed a fiduciary duty to him once Envision became insolvent. Plaintiff maintains that the Debtor breached this duty when he took assets that belonged to Envision and directed them to his own use. Even if this is true, however, it leaves unanswered a critical question: did this duty arise in the context of an express or technical trust? The Court concludes that Debtor owed a duty to Plaintiff assuming and as of Envision's insolvency, but that neither a technical nor express trust arose under California law upon insolvency or prior to the Debtor's alleged defalcation.

**B. The Fiduciary Relationship That Arises Between A Corporate Principal And The Corporation's Creditors Upon A California Corporation's Insolvency Does Not Stem From An Express Or Technical Trust Relationship.**

**1. Under California Law, Corporate Directors Upon Insolvency Owe Limited Fiduciary Duties To Creditors.**

In asserting that upon insolvency the Debtor became his fiduciary, Plaintiff invokes the long-standing principle of corporate law that corporate officers and directors generally occupy a fiduciary relationship only towards their corporation and shareholders, but that, in the event of insolvency, the fiduciary relationship is modified to expand or shift the duty to include the corporation's creditors. *See Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.,* 1991 WL 277613, 1991 Del. Ch. LEXIS 215 (Del. Ch. Dec. 30, 1991). In *Berg & Berg Enterprises LLC,* the California Court of Appeal analyzed and recognized this relationship, but held that, under California law, there is no broad, paramount fiduciary duty of due care or loyalty that directors of an insolvent corporation owe to its creditors. 178 Cal.App.4th at 1041, 100 Cal.Rptr.3d 875. Indeed, the *Berg* court declined "to create any such duty, which would conflict with and dilute the statutory and common law duties that directors already owe to shareholders and the corporation." *Id.* Instead, the Court of Appeal expressly limited the scope of any extra-contractual duty owed by corporate directors to the insolvent corporation's creditors to that "consistent with the trust-fund doctrine, to the avoidance of actions that divert, dissipate, or unduly risk corporate assets that might otherwise be used to pay creditors claims." *Id.* (italics omitted).

The Complaint pled facts sufficient to establish the fiduciary relationship recognized in *Berg.* It sufficiently alleged the insolvency of Envision, that Plaintiff was an Envision creditor at the time of insolvency, that the Debtor, a principal of Envision, diverted corporate assets to his own personal use thereafter, and that Plaintiff remains unpaid. The issue left unresolved after a review of *Berg,* however, is whether such a fiduciary relationship stems from an express or technical trust relationship of

the type required to trigger the section 523(a)(4) exception to discharge. Ninth Circuit authority, however, provides the answer to this question.

## 2. Corporate Principals Are Not Fiduciaries To Shareholders In The Section 523(a)(4) Context, And The Fiduciary Relationship Between Creditors And Corporate Principals After Insolvency Similarly Fails To Support A Section 523(a)(4) Exception To Discharge.

In *Cal–Micro Inc. v. Cantrell,* the Ninth Circuit considered whether a debtor, as a corporate principal, was the trustee of an express or technical trust under California law and, thus, was a fiduciary for purposes of the discharge exception for fiduciary fraud or defalcation. 329 F.3d at 1125. Cal–Micro, Inc. obtained a default judgment against one of its corporate directors, Cantrell, for breach of fiduciary duty. Cantrell then filed a voluntary Chapter 7 bankruptcy petition, and, in response, Cal–Micro filed a complaint seeking to except its default judgment from discharge under section 523(a)(4). The Ninth Circuit concluded that under California law officers and directors have fiduciary obligations to the corporation and its shareholders, but that they are not trustees with respect to an express or statutory (technical) trust. *Id.* at 1126. The Ninth Circuit relied heavily on *Bainbridge v. Stoner,* 16 Cal.2d 423, 106 P.2d 423 (1940) in reaching this decision and focused, among other things, on the *Bainbridge* court's determination that the relationship between a corporate director and the corporation and its shareholders is: "... strictly speaking, ... not one of trust, but of agency." *Id.* (quoting *Bainbridge,* 16 Cal.2d at 426, 106 P.2d 423). In the absence of an express or technical trust, Cal–Micro's claim was not excepted from discharge under section 523(a)(4).

*Cantrell* is factually distinguishable from the case here; it involved the relationship between a corporate principal and a corporate shareholder—not a corporate creditor. When one circles back to *Berg,* however, and recognizes that the *Berg* court determined that the duty owed by directors of an insolvent corporation to creditors, at best, is coextensive with the duty they owed to shareholders and the corporation itself, it appears that *Cantrell's* analysis and holding are the death knell for the Plaintiff's section 523(a)(4) cause of action. And a further analysis of the trust fund doctrine and California trust law underscores the aptness of this conclusion.

## 3. The Trust Fund Doctrine Does Not Give Rise To The Express Or Technical Trust Relationship Required By Section 523(a)(4).

As noted above, the *Berg* court limited the duty owed by principals of an insolvent corporation to that consistent with the trust fund doctrine. 178 Cal.App.4th at 1041, 100 Cal.Rptr.3d 875. The Court acknowledges that any reference to a trust suggests the applicability of section 523(a)(4), but a close analysis of the trust fund doctrine clarifies that neither an express nor technical trust is created when the trust fund doctrine applies.

The theory of the trust fund doctrine is that all of the assets of a corporation, immediately upon its becoming insolvent, become a "trust fund" for the benefit of creditors. *Saracco Tank & Welding Co. v. Platz,* 65 Cal.App.2d 306, 315, 150 P.2d 918 (1944). The objective of the trust fund doctrine is to prevent discrimination among creditors when the corporation becomes insolvent. 15A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 7369: The Trust Fund Doctrine in General (2012). The trust

fund theory first appeared in comments by Justice Story in 1824 in *Wood v. Dummer*, a case involving a banking corporation's attempt to distribute some of its capital assets among its stockholders while leaving a creditor unpaid. *Id.* Justice Story did not confine his theory to banking capital; in his treatise on Equity Jurisprudence at Vol 2, § 1252, he extended this implied trust theory to include "the stock and other property of private corporations." Fletcher Cyclopedia § 7369 at n. 1.

Subsequent decisions by the Supreme Court, however, departed from the use of the term "trust fund". *See Sanger v. Upton*, 91 U.S. 56, 60, 23 L.Ed. 220 (1875) (Supreme Court did not use the term "trust fund" but said that the capital stock "is a fund set apart for the payment of debts," and that "creditors have a lien upon it in equity."). And in *Hollins v. Brierfield Coal & Iron Co.*, the Supreme Court expressly rejected the suggestion of an actual trust concluding:

> While it is true language has been frequently used to the effect that the assets of a corporation are a trust fund held by a corporation for the benefit of creditors, this has not been to convey the idea that there is a direct and express trust attached to the property. As said in 2 Pomeroy's Equity Jurisprudence, § 1046, they "are not in any true and complete sense trusts, and can only be called so by way of analogy or metaphor."

150 U.S. 371, 381–382, 14 S.Ct. 127, 37 L.Ed. 1113 (1893).

The Ninth Circuit, thereafter, cited *Hollins* and also recognized the trust fund doctrine's tenuous connection to any kind of actual trust. *See, e.g., American Trust Co. v. Harris*, 88 F.2d 541, 544 (9th Cir. 1937) ("It is established that, when a court of equity takes into its possession the as-

sets of an insolvent corporation, it will administer them on the theory that in equity they belong to the creditors and shareholders rather than to the corporation itself."); *see also Meikle v. Export Lumber Co.*, 67 F.2d 301, 306–7 (9th Cir. 1933).

Thus, the term trust fund doctrine is a misnomer to the extent it suggests an express or technical trust. Indeed, one treatise goes so far as to state that: "[i]n no case applying the doctrine has an actual trust ever been impressed upon the assets of either a solvent or insolvent corporation." *Fletcher Cyclopedia* § 7369. This Court has not surveyed all cases applying the doctrine, but agrees that when one reviews the facts of the cases discussed herein and the many other cases considered by the Court, a trust is sometimes assumed, but that the facts never support the existence of an express or technical trust. The doctrine's reference to "trust", thus, does not refer to an express or technical trust. Instead, it references a situation analogous to a trust relationship where fiduciary duties arise or, perhaps, more aptly references a trust that may arise in the future if improper acts occur. As discussed below, however, if such a trust arises it is a trust *ex maleficio* or a resulting trust, not an express or technical trust.

4. **California Trust Law Makes Clear That The Relationship Between An Insolvent Corporation And Its Creditors, As Described In *Berg*, Does Not Create An Express Or Technical Trust.**

While *Berg, Cantrell*, and a close analysis of the trust fund doctrine all strongly support the Court's conclusion that corporate insolvency does not create an express or technical trust relationship between the insolvent corporation's principals and its

creditors, the Court also closely examined California trust law to insure that the relationship described in *Berg* did not otherwise resemble one involving an express or technical trust. As noted above, the *Berg* decision does not answer this question directly; the *Berg* court was answering a question far removed from a bankruptcy court's need for categorization of a trust in a section 523(a)(4) context. It, thus, had no need to discuss whether a trust actually arises at corporate insolvency or upon post-insolvency misappropriation or to label any such trust as express, technical, or other. A court assessing the applicability of section 523(a)(4), however, must undertake this analysis.

■■■■■ Under California law, a trust is: "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of intention to create it." *Presta v. Tepper*, 179 Cal. App.4th 909, 913–14, 102 Cal.Rptr.3d 12 (2009) (citation omitted). At least one authoritative source indicates that California trusts are classified into two broad categories: (i) *express trusts*, where the actual intent of the settlor is expressed; and (ii) *implied trusts*, where the intention is not expressed, including (a) *resulting trusts*, where the intention is implied by law, and (b) *constructive trusts*, which are imposed by law regardless of intention. 13 Witkin, *Summary of California Law*, Trusts § 1 (10th ed. 2005). Resulting and constructive trusts are "creature[s] of equity" and do not require writings or express declarations. *Calistoga Civic Club v. City of Calistoga*, 143 Cal.App.3d 111, 117–18, 191 Cal.Rptr. 571 (1983). California law, and Ninth Circuit authority discussing California law, also recognize technical trusts. As discussed below in subsection 9(b),

these trusts, while narrowly discussed in California case law, arise as the result of and at the commencement of a particular relationship such as that between a lawyer and her client, and they also may arise under common law and statute.

**(a) The Fiduciary Relationship Described In *Berg* Does Not Arise From Or In Relation To An Express Trust.**

■■■■■ In California, creation of an express trust requires: (1) a competent trustor; (2) trust intent; (3) trust property; (4) trust purpose; and (5) a beneficiary. Cal. Prob.Code §§ 15201–15203, 15205; *Luna v. Brownell*, 185 Cal.App.4th 668, 674 n. 7, 110 Cal.Rptr.3d 573 (2010). In particular, there must be an explicit declaration of trust followed by an actual conveyance or transfer of property to the trustee. *Bainbridge*, 16 Cal.2d at 428, 106 P.2d 423. While *Berg* recognizes that duties to creditors arise at corporate insolvency, this occurs in the absence of an explicit declaration of trust or an actual conveyance of a trust res.

Similarly, Plaintiff has not alleged facts sufficient to establish the requirements of an express trust Specifically, he failed to allege, or even argue, that either the Debtor, he, or anyone else had or stated any intent to create a trust or any intent that any particular asset be held in trust as the trust res. Instead, he relies exclusively on the assertion that corporate insolvency created the requisite trust relationship. Clearly, this is not the case.

**(b) Technical Trusts Do Not Arise Upon Corporate Insolvency Or At Post–Insolvency Defalcation.**

■■■■■ California law does not as clearly define a technical trust. California courts describe technical trusts as " 'those arising from the relation of attorney, executor, or guardian, and not to debts due by

a bankrupt in the character of an agent, factor, commission merchant, and the like.'" *Honkanen*, 446 B.R. at 379 n. 7 (citation omitted). A technical trust is not implied by contract. *Id.* [citing *Young v. Clark*, 7 Cal.App. 194, 197, 93 P. 1056 (1907)]. The relationship between a principal of an insolvent corporation and the corporation's creditors does not exhibit the characteristics of the relationships where a technical trust is traditionally found under California law. As noted above, California courts clearly recognize technical trusts as those arising from the relation of attorney, executor, or guardian. The fiduciary duty arising from these technical trust relationships—attorney-client, executor-testator, and guardian—ward goes into effect immediately upon the commencement of the relationship, while the fiduciary duty between a corporate principal and creditor arises only upon corporate insolvency. And obviously, the specifically recognized technical trust relationships are far more intimate and exclusive than that between an insolvent corporation and the corporation's creditors.

Also, the corporate principal/creditor duty finds its origins in agency principles and initially arises from contract. In distilling the relationship that exists between the director of a corporation and the corporation's shareholders, the California Supreme Court in *Bainbridge* held that: "[o]ne who is a director of a corporation acts in a fiduciary capacity, and the law does not allow him to secure any personal advantage as against the corporation or its stockholders. However, strictly speaking, the relationship is not one of trust, but of agency...." 16 Cal.2d at 428, 106 P.2d 423 (internal citations omitted). The United States Supreme Court has warned courts to avoid extending the section 523(a)(4) exception to discharge to these types of commercial relationships for over 150 years. *See Chapman v. Forsyth*, 43 U.S.

202, 207–9, 2 How. 202, 11 L.Ed. 236 (1844) (a factor, a corporate agent, is not a fiduciary within the meaning of the Bankruptcy Act of 1841).

California courts also expressly hold that a technical trust is not one implied by contract. *Honkanen*, 446 B.R. at 379 n. 7. Contracts memorializing business transactions, however, are at the heart of the vast majority of corporate/creditor relationships. The fiduciary relationship that arises upon insolvency between corporate principal and contract based creditors, thus, is one that, in essence, is implied in or arises from contract.

Other jurisdictions apply a broader definition of technical trusts and conclude that technical trusts are those created from common law or statute. *See, e.g., Tanneberger v. Paeplow (In re Paeplow)*, 217 B.R. 705, 709 (Bankr.D.Vt.1998); *Windsor v. Librandi (In re Librandi)*, 183 B.R. 379, 382 (M.D.Pa.1995); *New Jersey v. Kaczynski (In re Kaczynski)*, 188 B.R. 770, 774 (Bankr.D.N.J.1995). Even if the California courts were to adopt this broader definition of a technical trust, however, there is no California statute that creates a fiduciary relationship between a corporate officer or director and its creditors and, as previously noted, the *Berg* court found only a narrow fiduciary relationship arising between a corporate principal. *See Berg*, 178 Cal.App.4th at 1041, 100 Cal. Rptr.3d 875. A review of *Berg* provides no basis for argument that under either a narrow or broad view either corporate insolvency or post-insolvency defalcation creates a technical trust. Further, as discussed below, the relationship here fits neatly within another category of California trusts. The Court, thus, will not do violence to the definition of a technical trust by finding that one arises under the facts in *Berg* or in this case.

### (c) Any Trust Arising In A *Berg* Scenario Is A Constructive Trust.

 Two other types of trust relationships arise under California law, but are insufficient to give rise to section 523(a)(4) nondischargeability. A resulting trust is created by "operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest." *Fidelity National Title Ins. Co. v. Schroeder,* 179 Cal.App.4th 834, 847, 101 Cal. Rptr.3d 854 (2009) (citation omitted). It carries out and enforces the inferred intent of the parties. *Id.* A party need not prove an express or written agreement to enforce a resulting trust. *Id.* at 848, 101 Cal.Rptr.3d 854. A resulting trust does not arise under the alleged facts in the Complaint.

 A constructive trust, also called a trust *ex maleficio,* is a remedy to "compel a person who has property to which he is not justly entitled to transfer it to the person entitled" to it. *Campbell v. Superior Court,* 132 Cal.App.4th 904, 921, 34 Cal.Rptr.3d 68 (2005); *see also Kraus v. Willow Park Public Golf Course,* 73 Cal. App.3d 354, 373, 140 Cal.Rptr. 744 (1977). A constructive trust does not require a fiduciary relationship or a prior trust. *Del Costello v. State of California,* 135 Cal. App.3d 887, 892, 185 Cal.Rptr. 582 (1982). To succeed on a constructive trust claim, a plaintiff must show that the defendant was unjustly enriched so that for the defendant to keep the money would be wrongful. *Murphy v. T. Rowe Price Prime Reserve Fund, Inc.,* 8 F.3d 1420, 1423 (9th Cir. 1993) (applying California law). The wrongful act, however, can be less than fraud or intentional misrepresentation. *Calistoga Civic Club,* 143 Cal.App.3d at 116, 191 Cal.Rptr. 571.

 If the relationship between a creditor and the officer or director of an insolvent corporation correctly creates any kind of trust under California law, it is a constructive trust. The essence of the relationship as discussed in *Berg* and the trust fund doctrine is that the corporate principal is to maintain the assets of the corporation for the benefit of creditors and not to distribute them improperly. A constructive trust arises not at insolvency, but when a misappropriation occurs. And, as noted before, a constructive trust is not the type of trust necessary to support a section 523(a)(4) exception to discharge.

### C. Ninth Circuit Authority Other Than *Cantrell* Also Supports The Court's Conclusion, And The *Jacks* Decision Does Not Compel A Contrary View.

As a final step in this analysis, it is appropriate to circle back to the *Jacks* decision to review its pre-*Berg* and *Cantrell* analysis and to conclude the review with the Ninth Circuit's *Ragsdale* decision on which the *Jacks* court relied. The *Jacks* decision involved facts roughly identical to the facts alleged here. Mr. Jacks was the director of an insolvent corporation who misappropriated corporate funds for his personal use. 266 B.R. at 735. The *Jacks* court found that a trust arises upon a corporation's insolvency and generally references the trust fund doctrine. *Id.* at 736–737. The *Jacks* decision is not clear as to whether the trust it identified was a technical trust or an express trust; it refers to both and discusses trusts arising at common law, suggesting a technical trust, but also referenced Oregon's "parallel 'trust fund doctrine' [that] imposes an express trust...." *Id.* at 737. There is nothing in its analysis, however, that suggests that it anticipated the narrowness of California law as later explained in *Berg* or that it would reach the same conclusion after the Ninth Circuit's *Cantrell* decision

given the closely analogous fact pattern there.

Further, the *Jacks* court recognizes that the trust fund doctrine was subject to question as a basis for section 523(a)(4) liability. *Id.* The *Jacks* court clearly assumed that a broad common law duty existed between corporate insiders and corporate creditors once corporate insolvency occurred. This was not unreasonable given the broad common law duty between California partners identified in the *Ragsdale* decision. When the California courts spoke directly to this issue, however, the duty was extremely limited. And a review of *Ragsdale* makes clear that if a trust exists at all, it is not one that supports section 523(a)(4) nondischargeability.

In *Ragsdale,* the Ninth Circuit considered whether breach of a duty owed by one partner to another supported a section 523(a)(4) claim. 780 F.2d at 795. In considering this issue, the Ninth Circuit reviewed two possible bases for such a duty. First, it reviewed the then existing California statute. *Id.* at 796. This statute provided for a duty of a type and, most specifically, stated that partners were obligated to account to each other in connection with partnership benefits and to hold partnership profits obtained without partnership consent as a trustee for the other partner. *Id.* The Ninth Circuit concluded that this statutory duty did not give rise to section 523(a)(4) nondischargeability, because the trust in question was nothing more than a trust *ex maleficio*—a constructive trust arising only as a result of the wrongdoing. *Id.* In short, the parties owed a duty, but there was no pre-existing trust sufficient for section 523(a)(4) purposes.

The Ninth Circuit then went on, however, to focus on a broad general common law duty owed between partners under California common law. *Id.* at 796–797. It was this broad and expansive duty that

allowed the *Ragsdale* court to conclude that where partners misappropriated partnership assets the resulting claim for damages could be subject to nondischargeability under section 523(a)(4). The Ninth Circuit did not identify the type of trust, but must have concluded that California law created a technical trust between partners given the myriad of California cases holding squarely that partners are fiduciaries and owe broad duties to each other. *Id.*

When one compares the holding in *Ragsdale* to the California Court of Appeal decision in *Berg,* it again becomes clear that the duty owed to creditors by officers or directors of an insolvent corporation does not support a section 523(a)(4) exception to discharge. The *Berg* court emphasized the extreme limitations of such a duty; it in no way resembles the broad common law duty between partners that supported a section 523(a)(4) claim in *Ragsdale.* Instead, the *Berg* court describes a duty owed at corporate insolvency that squarely matches the statutory duty that the *Ragsdale* court found to be insufficient for section 523(a)(4) nondischargeability in the context of a partnership.

In conclusion, the *Ragsdale* court found that California partners were fiduciaries within the narrow meaning of section 523(a)(4), because California case law made clear that: "a partner necessarily is a trustee over partnership assets for all purposes...." *Id.* at 797. In the context of a corporate officer or director of an insolvent corporation and creditors, however, California case law reaches an entirely different conclusion, and, as a result, *Ragsdale* supports and, indeed, compels a conclusion that this relationship does not support a section 523(a)(4) claim.

## CONCLUSION

As pled and as argued, the facts of this case cannot, as a matter of law, give rise to a cause of action seeking an exception to discharge under section 523(a)(4). Thus, the second cause of action in the Complaint will be dismissed with prejudice. Plaintiff had two opportunities to plead his case. He based his argument exclusively on the duty owed by a director or officer as a result of corporate insolvency and relied squarely on *Jacks*. As discussed above, this argument must fail, and the *Jacks* decision cannot control. The *Jacks* court clearly assumed, as was reasonable at the time, that the California courts would find a broad duty similar to that between partners in the relationship between creditors and principals of an insolvent corporation. The *Berg* court, however, took a different path—and it is this route to decision that this Court must follow.

The Debtor must submit an order consistent with this decision within 14 days.