Filed 1/23/14  Isaka Investments v. Reerva CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ISAKA INVESTMENTS, LTD., et al., | B245650 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC342134) |
| v. | |
| RESERVA, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed.

Pircher, Nichols & Meeks, James L. Goldman and I. Bruce Speiser for Plaintiffs and Appellants.

Dickstein Shapiro, James H. Turken and Chanda R. Hinman for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiffs Isaka Investments, LTD. (Isaka), Sand Hill Capital International, Inc. (Sand Hill), and Richbourg Financial, LTD. (Richbourg Financial) (collectively, Plaintiffs) appeal from a judgment entered in favor of Defendants Hythiam, Inc. (Hythiam), Reserva, LLC (Reserva) and Terren S. Peizer (Peizer) (collectively, Defendants) after the sustaining of a demurrer and two bench trials.

Plaintiffs initiated this action in August 2006, claiming standing to sue as alleged shareholders and creditors of Xino Corporation (Xino). Plaintiffs principally sought to set aside an alleged fraudulent transfer whereby Hythiam acquired most of Xino's assets at a foreclosure sale stemming from a loan transaction between Xino and Peizer's company, Reserva. Plaintiffs also alleged Reserva breached a contract connected to the foreclosure sale that required Reserva to cause Hythiam to transfer 360,000 shares of Hythiam common stock to Xino in exchange for Xino obtaining releases from its creditors. Reserva and Hythiam claimed Xino breached this obligation by failing to obtain Plaintiffs' releases. In their initial complaint, Plaintiffs asserted derivative claims on behalf of Xino, and also named Xino, Xino's director Michael Hinton (Hinton) and Xino's former officer Joseph Dunn (Dunn) as defendants.

The principal issues in this appeal concern the interpretation of two settlement agreements and the effect of those agreements on Plaintiffs' standing to sue Defendants. In 2007, after Plaintiffs filed their second amended complaint, Xino and Hythiam entered into a settlement agreement (the Xino/Hythiam Agreement) whereby Hythiam agreed to deliver a total of 310,000 shares of its common stock to Xino, notwithstanding Xino's alleged failure to obtain all requisite creditor releases, and Xino agreed to release all claims against Hythiam, its "officers, directors, [and] shareholders" arising through the date of the agreement. At the time, Reserva was Hythiam's largest shareholder and Peizer was an officer and director of Hythiam.

In 2009, Plaintiffs entered into a settlement agreement with Xino, Hinton and Dunn (the Plaintiff/Xino Agreement) whereby Xino assigned all "claims alleged by Plaintiffs . . . against Hythiam, Reserva and Terren Peizer" to Plaintiffs and Plaintiffs

2

agreed that debts owed by Xino to Plaintiffs would be "non-recourse as to Xino's current and future assets."

In 2011, Plaintiffs filed the operative fourth amended complaint. In their capacity as Xino's creditors, Plaintiffs asserted a cause of action to set aside the alleged fraudulent transfer of Xino's assets to Hythiam. In their capacity as Xino's assignees, Plaintiffs asserted claims for breach of fiduciary duty, conversion, fraud, breach of contract, unfair business practices, and interference with contractual relations and prospective business advantage.

In April 2012, the court held a bench trial to determine whether Plaintiffs had standing to pursue a fraudulent transfer claim as Xino's creditors, notwithstanding provisions in the Plaintiff/Xino Agreement purporting to release all debts owed by Xino. After considering the extrinsic evidence offered by Plaintiffs, the trial court determined that the integrated Plaintiff/Xino Agreement was not susceptible of the interpretation urged by Plaintiffs, and held that Plaintiffs' release of Xino's debts extinguished Plaintiffs' standing to pursue a fraudulent transfer claim as Xino's creditors.

In October 2012, a second bench trial was held concerning the admissibility of the Xino/Hythiam Agreement and the scope of Xino's release. The trial court determined the agreement was admissible, notwithstanding Plaintiffs' contention they had been denied relevant discovery. The court also found the agreement released all claims Xino had or could have asserted against Defendants as of the agreement's effective date. Because all such claims were released, the court held the agreement barred Plaintiffs from asserting their remaining claims as Xino's assignees.

We agree with the trial court that the Plaintiff/Xino Agreement unambiguously extinguishes any creditor claim Plaintiffs had against Xino's assets. Accordingly, Plaintiffs lack standing to pursue a fraudulent transfer claim. We also hold the trial court properly admitted the Xino/Hythiam Agreement into evidence and that the agreement unambiguously releases all claims Plaintiffs asserted as Xino's assignees. The judgment is affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.  *The Xino/Reserva Loan Transaction and Hythiam's Acquisition of Xino's Assets*

Since 2001, Xino has been engaged in the business of providing technology, information, and administrative services for treatment and rapid detoxification of persons addicted to heroin, methadone, and other opiate-based drugs. Dunn and Hinton were elected to serve as Xino directors in 1997. Dunn also was designated Chairman and CEO and Hinton was designated Secretary.

On March 3, 2003, Reserva loaned Xino $300,000. At the time, Reserva was Peizer's wholly-owned investment vehicle and Hythiam's sole shareholder. Xino planned to use the funds for continuing operations and to build a revenue stream that would allow Xino to pay back the loan. The loan agreement consisted of a Promissory Note, Guaranty, and a Security Agreement. Pursuant to the Promissory Note, Xino promised to pay $300,000 plus interest within 100 days from March 3, 2003. The Security Agreement secured the Note and granted Reserva a continuing lien on Xino's assets, including its patents, licenses, trademarks and contracts with service providers.

The Security Agreement provided for a series of remedies should Xino default, one of which included the following condition: "If Secured Party [Reserva] sells or makes any type of transfer of all or substantially all of the Collateral to a newly-formed public corporation, [Reserva] will cause such corporation to agree to grant to [Xino] three percent (3%) of its common stock, subject to any agreement by which other shareholders are bound. Upon the issuance of such shares, any and all payment obligations under this Section shall immediately terminate."

Xino defaulted on the Reserva loan. On June 17, 2003, Reserva served a Notice of Default advising Xino that there would be an "Event of Default" if the balance of the loan was not paid within 30 days. Xino failed to repay the amount due. On July 30, 2003, Reserva served Xino with a Notice of Disposition of Collateral, advising Xino that Reserva intended to conduct a foreclosure sale.

4

On August 20, 2003, Reserva sold the collateral at a public auction. With the exception of some items of personal property, Hythiam acquired all of Xino's remaining assets, including its patents and other intellectual property.

In connection with the foreclosure sale, Dunn, Xino's then-CEO, executed a Consent to Foreclosure and General Release (Consent to Foreclosure) on behalf of Xino. Peizer counter-executed the Consent to Foreclosure on behalf of Reserva. In the Consent to Foreclosure, Xino acknowledged that the public auction had occurred after proper notice and public advertising, and that the auction had been conducted in a commercially reasonable manner. Xino also acknowledged that upon completion of the sale, it had no further right, title, or interest in or to any of the collateral.

Pursuant to the Consent to Foreclosure, Reserva agreed to cause Hythiam to grant Xino 360,000 shares of Hythiam common stock, subject to the condition that Xino first obtain releases from its creditors. A list of Xino's creditors was attached to the Consent to Foreclosure. Although that list did not include Plaintiffs, Plaintiffs' president and chief operating officer, Terry Marsh (Marsh), claimed Plaintiffs were creditors, but refused to provide releases.

Due to Plaintiffs' refusal to release their creditor claims, Reserva and Hythiam maintained that Xino had failed to obtain all required releases. The Consent to Foreclosure gave Reserva discretion to "agree or cause Hythiam to agree to grant a portion of the Shares before all Creditors have granted releases, if [Xino] obtains releases from a substantial portion of significant Creditors." Pursuant to that provision, Hythiam initially agreed to release 100,000 of the 360,000 shares that had been issued to Xino. Hythiam later released an additional 150,000 shares to Xino.

2.     *The Zinn Action and Plaintiffs' Complaint*

This litigation commenced on October 27, 2005, when Gary Zinn (Zinn), a shareholder and former Xino director, filed a complaint against Xino, Hinton and Dunn alleging, inter alia, that Hinton and Dunn, as directors and officers of Xino, breached their fiduciary duties in connection with the Reserva loan transaction (the Zinn Action).

5

On January 31, 2005, Xino filed a cross-complaint against Zinn and Plaintiffs' principal, Marsh.

On August 18, 2006, Plaintiffs filed their initial complaint against Xino, Hinton, Dunn, Hythiam, Reserva, Peizer and others. The complaint asserted causes of action for an accounting and declaratory relief against Xino to establish the nature and amount of Plaintiffs' alleged equity and debt investments. Plaintiffs also asserted derivative claims as Xino shareholders for breach of fiduciary duty against Hinton and Dunn; fraudulent transfer against Reserva and Hythiam; and conversion against all defendants except Xino. Plaintiffs' derivative claims were all based upon Defendants' alleged misconduct with respect to the Reserva loan transaction, foreclosure, and Hythiam's acquisition of Xino's assets.

On February 2, 2007, the Zinn Action and Plaintiffs' action were consolidated. On February 7, 2007, Plaintiffs filed their first amended complaint, asserting the same causes of action.

On July 19, 2007, Plaintiffs filed their second amended complaint. The second amended complaint added a new cause of action for breach of contract, asserted derivatively on behalf of Xino, in which Plaintiffs alleged Reserva had breached the Consent to Foreclosure by failing to cause Hythiam to deliver all 360,000 shares.

3. *The Xino/Hythiam Agreement*

On August 8, 2007, Hythiam and Xino entered into the Xino/Hythiam Agreement. The agreement included recitals stating that Hythiam had issued Xino 360,000 shares of Hythiam common stock pursuant to the Consent to Foreclosure and acknowledging Hythiam had withheld 110,000 of those shares due to the parties' dispute over Xino's obligation to obtain releases from its creditors.

The Xino/Hythiam Agreement provides for Hythiam to deliver 60,000 of the withheld shares to Xino, with the other 50,000 shares to be canceled, such that Xino would "own, hold and control all of the remaining 310,000 shares of Common Stock" free and clear of any security interest. In exchange, Xino agreed, on behalf of itself and its shareholders, to release and discharge Hythiam and Hythiam's current and former

6

"officers, directors [and] shareholders . . . from any and all . . . claims, demands, liabilities, obligations, causes of action and rights of action arising up through and including the date of this Agreement, whether known or unknown, vested or contingent." At the time, Reserva was Hythiam's largest shareholder and Peizer was an officer and director of Hythiam. With respect to intended beneficiaries, the agreement states that it is "for the benefit of the Parties hereto and for the benefit of the individuals and entities released hereby whether or not parties hereto." The agreement further provides that it "shall inure to the benefit and shall be binding upon the respective successors and assigns of each of the Parties hereto."

The Xino/Hythiam Agreement contains a "Litigation Cooperation" clause, whereby Xino and Hinton voluntarily agreed "to cooperate with Hythiam and its legal counsel in defending all claims against Hythiam, its officers or directors." The provision also prohibits Hinton from communicating with "any opposing parties . . . about the litigation or the subject matter of the litigation, except as required by law in response to a subpoena, deposition notice, or other legal process, until the litigation is concluded."

The Xino/Hythiam Agreement is fully integrated. Hinton executed the agreement individually and on behalf of Xino as its president. Xino represented that the agreement had been "authorized and unanimously approved by XINO's board of directors." Chuck Timpe (Timpe), Hythiam's chief financial officer, counter-signed on behalf of Hythiam.

4.      *Plaintiffs' Discovery Concerning the Xino/Hythiam Agreement*

In May and July of 2008, Plaintiffs deposed Hinton, Timpe and John Kirkland (Kirkland), corporate counsel for Reserva and Hythiam, concerning the Xino/Hythiam Agreement. Hinton testified that he executed the agreement on behalf of Xino after negotiating the agreement with Timpe. According to Hinton, Timpe was concerned about the pending lawsuit and claimed Xino had not fulfilled its agreement to obtain releases from Plaintiffs. Hinton confirmed the litigation cooperation provision was added to address Plaintiffs' lawsuit. When asked whether Xino intended the release to encompass the Plaintiffs' derivative claims, Hinton testified that he could not recall whether that was the intent.

7

Timpe testified that he and Hinton had negotiated the substantive terms of the Xino/Hythiam Agreement and then turned it over to their attorneys to document those terms.  He could recall his discussions with Hinton in only "general terms."  The principal points they negotiated required Hythiam to deliver a certain number of the withheld shares, and cancel the remainder, in exchange for a mutual release of claims.  Timpe was unable to recall discussions with Hinton regarding specific paragraphs of the agreement.

Kirkland testified that he had participated in drafting the Xino/Hythiam Agreement, but could not recall any direct communications with Xino regarding the terms.

Plaintiffs did not move to compel further responses from Hinton, Timpe or Kirkland.  Instead, Plaintiffs subpoenaed Defendants' trial counsel, Dickstein Shapiro (Dickstein), and Xino's trial counsel, Douglas Kuber (Kuber).  On September 29, 2008, the trial court denied Plaintiffs' motion to compel the Dickstein deposition on the ground that Plaintiffs had failed to make a sufficient showing regarding the need to depose trial counsel.  Thereafter, the parties stipulated that, if requested, the court would grant a protective order precluding Kuber's deposition on identical grounds.

5.      *Defendants' Motion for Summary Judgment*

On January 15, 2009, the trial court granted Defendants' motion for summary judgment on Plaintiffs' then-operative second amended complaint.  The court held Plaintiffs' fraudulent conveyance and conversion claims failed as a matter of law because the Consent to Foreclosure had released Defendants from all claims arising from the foreclosure sale.  The trial court likewise rejected Plaintiffs' breach of contract claim.

In granting Defendants' motion for summary judgment, the trial court explained that its ruling was not based on the general release in the Xino/Hythiam Agreement, and noted that Plaintiffs' counsel had "said there was discovery outstanding on that issue."

Plaintiffs appealed the summary judgment.

8

6. *The Plaintiff/Xino Agreement*

In March 2009, Plaintiffs, Marsh and Zinn on the one hand and Xino, Hinton and Dunn on the other entered into the Plaintiff/Xino Agreement. In the agreement, Xino acknowledged that Plaintiffs owned shares of Xino common stock, referred to as the "Xino Shares," and that Plaintiffs had made loan advances to Xino, referred to as the "Xino Debts." The agreement provides for Plaintiffs to assign all of their rights with respect to the Xino Shares to Xino, with the exception of one share per Plaintiff, referred to as the "Retained Shares." As for the Xino Debts, the agreement provides that the "Xino Debts will be non-recourse as to Xino's current and future assets."

In exchange, Xino agreed to assign Plaintiffs "without representation or warranty, any and all rights that it may have to prosecute the claims alleged by Plaintiffs in the Xino Actions against Hythiam, Reserva and Terren Peizer . . . ." Xino also released its cross-claims against Zinn and Plaintiffs' principal, Marsh.

Additionally, paragraph 10, entitled "Plaintiffs and Marsh Agreement regarding Equity and Debt in Xino," states: "If and to the extent any Plaintiff in the Xino Actions or Marsh have any equity, debt or other interest in Xino they hereby agree that, except for the Retained Shares, any such interest is hereby relinquished, released and extinguished."

7. *Reversal of Summary Judgment, the Operative Fourth Amended Complaint, and Demurrer to the Breach of Fiduciary Duty Claim*

In October 2010, this court reversed the summary judgment entered in favor of Defendants. With respect to the fraudulent transfer cause of action, we held Plaintiffs had standing to assert the claim directly as Xino creditors, but lacked standing to challenge the transfer derivatively as Xino shareholders. We further held that Xino's release in the Consent to Foreclosure extended to only its claims, and Xino had no authority to release Plaintiffs' fraudulent transfer claim, which was brought directly by Plaintiffs as Xino's creditors.

9

We also held Plaintiffs' evidence raised a triable issue of fact concerning the validity of the Consent to Foreclosure and that the sale of Xino's collateral, if unauthorized, would constitute a conversion. We also reversed the judgment with respect to Plaintiffs' breach of contract cause of action, and held that Plaintiffs had standing to assert the breach of contract and conversion claims derivatively as Xino shareholders. Our opinion did not address the effect of the Xino/Hythiam Agreement's release provisions on the derivative claims Plaintiffs asserted on behalf of Xino.

After remand, Plaintiffs filed their third amended complaint. The trial court sustained Defendants' demurrer to the complaint, with leave to amend.

On September 2, 2011, Plaintiffs filed the operative fourth amended complaint. Plaintiffs asserted a claim for fraudulent transfer as Xino creditors, seeking to set aside the loan transaction and foreclosure sale. With respect to the remaining causes of action for breach of fiduciary duty, conversion, fraud, breach of contract, unfair business practices and interference with contractual relations and prospective business advantage, Plaintiffs asserted standing to pursue those claims as Xino's assignees pursuant to the Plaintiff/Xino Agreement.

Defendants demurred to the complaint. The trial court sustained the demurrer to the breach of fiduciary duty claim without leave to amend, holding that the complaint failed to allege facts sufficient to establish a fiduciary relationship between Plaintiffs and Defendants. The court also sustained the demurrer to the interference claim without leave to amend, and overruled Defendants' demurrer in all other respects.

8. *The April Bench Trial Concerning the Plaintiff/Xino Agreement*

Beginning on April 16, 2012, the trial court conducted a two-day bench trial to determine whether Plaintiffs had standing to pursue the fraudulent transfer claim as

10

Xino's creditors under the Plaintiff/Xino Agreement.[1] Plaintiffs presented testimony by their counsel, James Goldman (Goldman), who participated in drafting the agreement, and Marsh, Plaintiffs' principal and signatory to the Plaintiff/Xino Agreement. No other witnesses testified.

Goldman testified that he and Xino's attorney, Christopher Cella (Cella), extensively negotiated the Plaintiff/Xino Agreement. He asserted the release was intended to benefit only Xino, Hinton and Dunn—not Defendants. Hence, Goldman maintained that the Xino Debts had been carved out from the general release, and were made "non-recourse . . . non-collectible as to Xino's assets." Goldman testified Cella drafted paragraph 10 and that the provision was intended to ensure Plaintiffs would have no "debt interest" in any Xino assets "other than whatever they can recover in this case." When asked whether Plaintiffs could sue Xino to recover the Xino Debt, Goldman responded that the Xino Debts "were not extinguished," but were "nonrecourse, so technically [Plaintiffs] could have gotten a judgment, but then they couldn't collect on the judgment so it would have been pointless to file the lawsuit."

Marsh similarly testified that he did not believe Plaintiffs had relinquished all debts owed by Xino when he executed the Plaintiff/Xino Agreement. The assertion contradicted his prior deposition testimony, in which Marsh affirmed that he "understood that [he] and the corporate Plaintiffs were all giving up any claims for moneys owing . . . by Xino" when he signed the Plaintiff/Xino Agreement.

---

[1]    The trial court also considered the scope of Xino's assignment of claims in the Plaintiff/Xino Agreement. The court concluded the assignment extended to only those claims that were "alleged by Plaintiffs in the Xino Actions" at the time the agreement was executed—i.e., the fraudulent conveyance, conversion and breach of contract claims asserted in the second amended complaint. Accordingly, the court held Plaintiffs lacked standing to pursue the fraud and unfair business practices claims as Xino assignees. Because we conclude that Xino released all claims it had against Defendants when it entered the Xino/Hythiam Agreement, we will not address the trial court's ruling concerning the scope of the Plaintiff/Xino Agreement assignment. The scope of the assignment is inconsequential because all claims that Plaintiffs could assert as Xino's assignees are barred by the Xino/Hythiam Agreement's release.

11

The trial court concluded the Plaintiff/Xino Agreement unambiguously released any creditor claim Plaintiffs may have had against Xino's assets and that Plaintiffs' evidence failed to expose a latent ambiguity permitting a different interpretation. Because Plaintiffs had relinquished their creditor claims against Xino's assets, the court held Plaintiffs lacked standing to pursue the fraudulent transfer claim.

9. *The Addendum to the Plaintiff/Xino Agreement and Plaintiffs' Motion to Amend*

On April 19, 2012, two days after the trial court announced its decision, Plaintiffs and Hinton executed an "Addendum" to the Plaintiff/Xino Agreement pursuant to the agreement's further assurances clause. With respect to the Xino Debts, the Addendum states that "the Xino Debts were intended to remain outstanding, but the [Plaintiffs] would be precluded from enforcing them only as against Xino's current and future assets, and not against any recovery against the Hythiam Defendants . . . ." The Addendum further provides, "[n]otwithstanding any other provision herein, the Xino Debts will remain non-recourse as to Xino's former, current and future assets . . . ."

On April 25, 2012, Plaintiffs filed an ex parte application seeking to reopen evidence to introduce the Addendum. The trial court denied the application.

On May 3, 2012, Plaintiffs filed a motion for leave to amend the complaint to allege standing under the Addendum. The trial court denied the motion, concluding that Plaintiffs could not avoid the effect of its decision by filing an amended complaint.

10. *Post-Appeal Discovery Concerning the Xino/Hythiam Agreement*

In late-2011, Plaintiffs propounded new wide-ranging discovery requests, two of which related to the Xino/Hythiam Agreement. With respect to documents, Plaintiffs requested that Hythiam produce all documents "reflecting, referring to, consisting of, evidencing, or relating to any contract or agreement between YOU and [Xino]." Plaintiffs also propounded a special interrogatory on Reserva requesting identification of "each ORAL COMMUNICATION that occurred in connection with the [Xino/Hythiam Agreement]."

Defendants objected to the requests on several grounds, including attorney-client privilege and overbreadth. Plaintiffs moved to compel responses. With the parties' consent, the trial court referred the motion to a discovery referee. The discovery referee recommended that the motion be denied as to the document request and granted in part as to the interrogatory. With respect to the interrogatory, the referee recommended that Reserva be compelled to "identify non-privileged communication[s], if any, in connection with the [Xino/Hythiam Agreement]." Defendants objected to the recommendation. The trial court sustained the objection, ruling that the interrogatory was overbroad and should be narrowed to "identif[y] people involved in the communication as well as a time frame for the communications . . . ."

Rather than propound a more narrow interrogatory, Plaintiffs served deposition notices on Hythiam and Reserva for their "most qualified" witnesses concerning the Xino/Hythiam Agreement and 26 other subjects. The deposition notices also included requests for production of non-privileged documents, narrowed to the last half of 2007. Defendants again produced Timpe to testify concerning the Xino/Hythiam Agreement. Timpe testified that he participated in the negotiations to "a limited extent" and that "the agreement was produced between the attorneys." Timpe reaffirmed that the agreement was prompted by the instant lawsuit and that Hinton had approached him with the proposal as a "way to get it all resolved . . . ." With respect to the litigation cooperation provision, Timpe testified that he and Hinton did not discuss whether the provision extended to cooperating with Reserva and/or Mr. Peizer. Timpe also confirmed that he did not have any documents related to the Xino/Hythiam Agreement.

Plaintiffs moved to compel compliance with the deposition notices. Their motion focused on Timpe's alleged refusal to testify concerning subjects unrelated to the Xino/Hythiam Agreement, but did not challenge Timpe's qualification to testify concerning the agreement. The trial court denied the motion to compel.

13

11.     *The October Bench Trial Concerning the Xino/Hythiam Agreement*

In October 2012, the parties were asked to submit briefs concerning the admissibility of the Xino/Hythiam Agreement and the effect of the agreement on Plaintiffs' remaining claims. Plaintiffs argued the agreement should not be received into evidence because they had been denied discovery concerning the circumstances surrounding the negotiation and execution of the agreement.  Plaintiffs also argued the agreement could not be construed as a release of their then-pending derivative claims because there was no evidence that it had been approved by Xino's shareholders, a disinterested committee of Xino's board of directors, or the court.  Defendants argued Plaintiffs had been allowed adequate discovery and that there was no basis for imposing an evidentiary sanction because Defendants had not withheld any discovery they were ordered to produce.

While Plaintiffs were clear that they were not waiving their right to have a jury decide factual issues, Plaintiffs acknowledged there was no extrinsic evidence to establish a latent ambiguity in the Xino/Hythiam Agreement.  Accordingly, the parties stipulated that the trial court should rule on the admissibility of the Xino/Hythiam Agreement and interpret the agreement to determine whether it barred Plaintiffs' remaining claims.

The trial court ruled that the Xino/Hythiam Agreement was admissible and that its unambiguous terms effectively released Plaintiffs' remaining claims against Defendants. In reaching this conclusion, the court determined Plaintiffs failed to establish that shareholder, disinterested board or court approval was required to release the derivative claims Plaintiffs asserted at the time the agreement was executed.

The trial court entered judgment for Defendants on November 19, 2012.  Plaintiffs timely appealed.

**DISCUSSION**

1.      *The Xino/Hythiam Agreement*

        a.      *Xino released all claims against Defendants, including those asserted by Plaintiffs as Xino's assignees*

In holding Plaintiffs were barred from suing Defendants as Xino's assignees, the trial court determined that the release provision in the Xino/Hythiam Agreement extended to all claims Xino had or could have asserted against Hythiam and its officers, directors and shareholders, including Reserva and Peizer, at the time the agreement was executed.

Plaintiffs challenge the trial court's rulings on multiple grounds. First, Plaintiffs contend the Xino/Hythiam Agreement should not have been admitted into evidence because they were denied relevant discovery concerning the agreement. Second, Plaintiffs argue the trial court's construction of the release provision is inconsistent with the agreement's terms because the agreement does not identify Plaintiffs' then-pending derivative claims, nor does it specifically name Reserva or Peizer as intended beneficiaries. Third, Plaintiffs contend the trial court erroneously concluded the agreement was enforceable, despite the absence of any evidence establishing that the agreement had been approved by Xino's shareholders, a disinterested committee of its board of directors, or the court.

The trial court's decision to receive the Xino/Hythiam Agreement into evidence was a reasonable exercise of discretion. Defendants complied with all discovery orders and Plaintiffs were permitted ample discovery concerning the agreement. We also agree with the court's construction of the release provision, and hold that the release bars Plaintiffs, as Xino's assignees, from pursuing any claims that Xino had or could have asserted against Defendants at the time the agreement was executed. On this ground, we affirm the judgment with respect to all claims asserted by Plaintiffs as Xino's assignees—

15

namely, the breach of fiduciary duty, conversion, fraud, breach of contract, and unfair business practices claims.[2]

        b.    *Receiving the Xino/Hythiam Agreement into evidence was not an abuse of discretion*

Plaintiffs contend the trial court abused its discretion by receiving the Xino/Hythiam Agreement into evidence despite denying Plaintiffs' attempts to obtain discovery regarding "the parties' intent on [the] scope of the releases and whether the agreement was part of a fraudulent scheme." Plaintiffs contend "Defendants never produced *any* documentary evidence of the negotiations for the agreement, and they provided only a small, useless portion of the testimonial evidence that they should have provided." On this basis, Plaintiffs argue Defendants "should not have been permitted to rely on the [Xino/Hythiam Agreement] to support their 'release' defense." We disagree.

We review a discovery sanction order "under the abuse of discretion standard and resolve all evidentiary conflicts most favorably to the trial court's ruling. We will reverse only if the trial court's order was arbitrary, capricious, or whimsical. It is appellant's

---

2     As we noted in the procedural history, Plaintiffs' claim for breach of fiduciary duty was dismissed on demurrer to the fourth amended complaint without leave to amend. Plaintiffs' fraud and unfair business practices claims and the portion of the breach of contract claim based on the Reserva Security Agreement were dismissed at the April bench trial after the court determined the scope of the assignment clause in the Plaintiff/Xino Agreement did not extend to claims that were not asserted at the time the agreement was executed. Plaintiffs challenge each of these rulings on appeal. We need not decide whether these rulings were in error. Our State Constitution and statute mandate that we reverse a judgment only upon a showing of *prejudicial* error. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; Civ. Proc. Code, § 475 ["No judgment . . . shall be reversed or affected by reason of any error . . . unless it shall appear from the record that such error . . . was prejudicial, . . . and that a different result would have been probable if such error . . . had not occurred or existed"].) Because we conclude, as a matter of law, the Xino/Hythiam Agreement bars Plaintiffs, as Xino's assignees, from asserting the breach of fiduciary duty, fraud, breach of contract and unfair business practices claims, no different result would be obtained were we to find error in the trial court's rulings dismissing these causes of action.

16

burden to affirmatively demonstrate error and where the evidence is in conflict, we will affirm the trial court's findings. [Citation.] We presume the trial court's order was correct and indulge all presumptions and intendments in its favor on matters as to which it is silent." (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1224.)

Plaintiffs appear to argue that since Timpe and Hinton could not recall any specific discussions regarding the scope of the Xino/Hythiam Agreement's release provision, and otherwise testified that they deferred to their attorneys who drafted the agreement, this somehow required the trial court to either compel the trial attorneys' depositions or bar Defendants from relying upon the Xino/Hythiam Agreement—a document that undisputedly was produced in discovery. This conclusion is not compelled by any authority cited by Plaintiffs.[3] Indeed, such a holding would incongruously expand the simple notion that a trial court may preclude a party from relying on documents and evidence *not produced in discovery.* (See, e.g., *Thoren v. Johnston & Washer* (1972) 29 Cal.App.3d 270, 273-274.)

In *New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1423, the court emphasized that the Discovery Act permits an evidence sanction "only if a party fails to obey a court order compelling discovery." As the court explained, "[t]he statutory requirement that there must be a failure to obey an order compelling discovery before the court may impose a nonmonetary sanction for misuse of the discovery process provides some assurance that such a potentially severe sanction will be reserved for those circumstances where the party's discovery obligation is clear and the failure to comply with that obligation is clearly apparent." (*Ibid.*)

---

[3]     Plaintiffs cite *A & M Records, Inc. v. Heilman* (1977) 75 Cal.App.3d 554, 566 for the proposition that the Discovery Act "compels the court to prevent a litigant claiming his constitutional privilege . . . in discovery and then waiving the privilege and testifying at trial." That is not the case here. The Xino/Hythiam Agreement was disclosed to Plaintiffs and was the subject of numerous depositions and written discovery requests. Defendants did not withhold any privileged communications in discovery that they later relied upon at trial. Defendants disclosed the Xino/Hythiam Agreement and relied upon the agreement's unambiguous terms to establish their release defense. *A&M Records* is inapposite.

17

Defendants produced the Xino/Hythiam Agreement and complied with all discovery orders. The trial court denied Plaintiffs' motions to compel the trial attorneys' depositions and other related discovery responses. Plaintiffs have failed to present any reasoned argument to overcome our presumption that these rulings were correct. We find no abuse of discretion in receiving the Xino/Hythiam Agreement into evidence.

c. *The Xino/Hythiam Agreement unambiguously released Xino's claims against Defendants*

The release by Xino in the Xino/Hythiam Agreement provides: "XINO, on behalf of itself and its current and former . . . shareholders . . . hereby releases and discharges Hythiam, and all those acting on its behalf and each of their current and former . . . officers, directors, [and] shareholders . . . from any and all . . . claims, demands, liabilities, obligations, causes of action and rights of action arising up through and including the date of this Agreement, whether known or unknown, vested or contingent . . . ." The trial court determined this release language unambiguously extended to all claims asserted by Plaintiffs as Xino's assignees, including those claims asserted against Peizer (an officer and director of Hythiam) and Reserva (Hythiam's largest shareholder).

Plaintiffs challenge this construction on two grounds. First, Plaintiffs argue the absence of a specific reference to Peizer and Reserva renders the release ambiguous, thus placing the burden on Defendants to produce extrinsic evidence establishing that Peizer and Reserva were intended beneficiaries. Second, Plaintiffs contend the lack of any reference to their derivative claims creates a further ambiguity, also requiring Defendants to produce extrinsic evidence proving that Xino intended the release to extend to those claims.

18

In support of their first contention, Plaintiffs rely chiefly upon *Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337 (*Neverkovec*). That case arose from a two-car accident in which the insurer for one of the car owners agreed to pay its policy limits and obtained written releases from the injured parties extending to the insurer, three named individuals, and " 'any other person . . . charged or chargeable with responsibility or liability' resulting from the accident." (*Id.* at pp. 349-350.) In a suit brought by one of the injured parties against the second driver, the trial court entered summary judgment for the driver on the ground that the release's "any other person" clause excused him from liability. The Court of Appeal reversed.

In the passage cited by Plaintiffs, the *Neverkovec* court observed "[t]he circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement." (*Neverkovec, supra,* 74 Cal.App.4th. at p. 348.) The court stated "[t]he burden of proof is on the third party," and "[b]ecause the court must consider the circumstances of the contracting parties' negotiations to determine whether a third party not named in the release was an intended beneficiary, it will seldom be sufficient for the third party simply to rely on a literal application of the terms of the release." (*Id.* at p. 349.) Relying upon this passage, Plaintiffs argue "Defendants utterly failed to meet *their burden* of showing that Xino intended to release parties and claims not identified in the Xino/Hythiam [Agreement]." We disagree.

To begin, *Neverkovec* is inapposite, because the Xino/Hythiam Agreement does not contain a global "any other persons" release. On the contrary, the release covers Hythiam and its "officers, directors [and] shareholders"—a relatively limited class which undisputedly includes Peizer and Reserva. Furthermore, the Xino/Hythiam Agreement explicitly states that it "is for the benefit of the Parties hereto *and* for the benefit of the individuals and entities released hereby *whether or not parties hereto*." (Italics added.) The terms of the agreement express a clear intent to extend the benefits of the release beyond the named parties and to those persons and entities who, due to their close

19

affiliation and financial ties to Hythiam, would naturally be included in an agreement seeking to "resolve and settle all issues" between the contracting parties.

We also do not accept the premise that an unnamed party, belonging to a class unambiguously covered by a release, bears the additional burden of presenting extrinsic evidence to prove the contracting parties actually intended the release to benefit that party. If a contract expressly and unambiguously grants rights to a class that undisputedly includes the person seeking to enforce it, proof of the contract alone makes out the person's threshold case for enforcement of those contractual rights. (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1031 [rejecting plaintiff's contention, premised on *Neverkovec*, that there is a "general burden on the person invoking the agreement to find a way to prove, as plaintiff insists, an '*actual intent* to benefit the third party' "].) Here, the plain language of the Xino/Hythiam Agreement itself established that Xino's release extended to Peizer (an officer and director of Hythiam) and Reserva (Hythiam's largest shareholder). Defendants were not required to present extrinsic evidence to prove that Xino actually meant what its agreement said.

For much the same reason, we conclude the absence of a specific reference to Plaintiffs' derivative claims does not render the release facially ambiguous, nor does it require Defendants to present extrinsic evidence to prove Xino intended to release these derivative claims. The release states that it applies to "all . . . claims, demands, liabilities, obligations, causes of action and rights of action arising up through and including the date of this Agreement, whether known or unknown, vested or contingent." The derivative claims that Plaintiffs asserted on Xino's behalf at the time the Xino/Hythiam Agreement was executed are plainly included among those "causes of action and rights of action arising up through and including the date of this Agreement . . . ."

Plaintiffs admit they had no extrinsic evidence to suggest the parties intended to exclude the derivative claims from the release. "[A]bsent such evidence, ' " '[t]he law imputes to a person an intention corresponding to the reasonable meaning of his words and acts.' " ' [Citation.]" (*Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299, 305; see also *id.* at pp. 303-304 [holding " 'all claims and causes of action' " release

20

was "enforceable as written" and applied to plaintiff's FEHA claims where plaintiff "offered no extrinsic evidence establishing the parties' intent to exclude her FEHA claim from the settlement"].)  The release here is enforceable as written, without requiring Defendants to present cumulative extrinsic evidence to establish Xino actually intended the derivative claims to be included in its release of "all . . . claims, demands, liabilities, obligations, [and] causes of action . . . ."

As Xino's assignees, Plaintiffs are bound by any defenses available against Xino. (*Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 962.)  Indeed, Xino and Hythiam expressly pledged that the release would "inure to the benefit and shall be binding upon the respective successors and assigns of each of the Parties hereto." Because the release in the Xino/Hythiam Agreement bars Xino from prosecuting any causes of action against Defendants arising through the date of the agreement, Plaintiffs, as Xino's assignees, are likewise barred from prosecuting such claims.  This extends to Plaintiffs' claims for breach of fiduciary duty, conversion, fraud, breach of contract, and unfair business practices—all of which Plaintiffs asserted as Xino's assignees based on alleged facts occurring prior to the execution of the Xino/Hythiam Agreement.

d.    *Plaintiffs cannot avoid the effect of the release by claiming Xino lacked authority to enter the Xino/Hythiam Agreement*

Plaintiffs' final challenge to the Xino/Hythiam Agreement concerns the approvals that Plaintiffs contend were required to authorize Xino's release of derivative claims. Plaintiffs argue Defendants could not avail themselves of the release's protections without establishing that the agreement was approved by Xino's shareholders, a disinterested committee of Xino's board, or the court.  The applicable law is to the contrary.

The parties agree that Xino is a Delaware corporation.  Delaware has abolished the ultra vires defense to enforcement of a corporate contract where the defense is asserted by the corporation or its stockholders against a party contracting with the corporation.  Title Eight of the Delaware Code, section 124, entitled "Effect of lack of corporate capacity or power; ultra vires," provides:  "No act of a corporation . . . shall be invalid by reason of

21

the fact that the corporation was without capacity or power to do such act . . . , but such lack of capacity or power may be asserted:  [¶]  (1) In a proceeding by a stockholder against the corporation to enjoin the doing of any act or acts . . . ."  Thus, Delaware law relieves a party contracting with a corporation of the burden to establish that the corporation obtained all required corporate approvals, and shifts that burden to the stockholders who dispute the corporation's authority.   To assert that challenge, the stockholders are required to bring an action *against the corporation*—not the contracting third party.

Plaintiffs were aware of the Xino/Hythiam Agreement for several years prior to the October 2012 trial.  What is more, Plaintiffs were given multiple opportunities to amend their complaint to challenge Xino's authority to enter the agreement.  Despite this, the operative fourth amended complaint makes no mention of the Xino/Hythiam Agreement, nor of Hinton's purported lack of authority to execute it on behalf of Xino.  In any event, Plaintiffs' objection to the agreement should have been directed at Xino.  Defendants' right to enforce the release cannot be challenged by alleging Xino lacked capacity or authority to enter the agreement.

As for court approval, it is true that when a *plaintiff* in a derivative suit seeks to settle or dismiss the action, court approval is required.  But this is because the plaintiff acts in a representative capacity, as "a trustee for the corporation's cause of action and as such cannot dismiss the action without the consent of the trial court."  (*Ensher v. Ensher, Alexander & Barsoom* (1960) 187 Cal.App.2d 407, 410.)  The rule has no application where the *corporation* resolves to settle and release its own causes of action.  We reiterate, insofar as Plaintiffs opposed Xino's authority or decision to release its claims in the Xino/Hythiam Agreement, Plaintiffs' recourse was against Xino—not the parties with whom Xino chose to contract.

The judgment is affirmed as to Plaintiffs' claims for breach of fiduciary duty, conversion, fraud, breach of contract, and unfair business practices.

2. *The Plaintiff/Xino Agreement*

        a. *Plaintiffs lack standing to pursue a fraudulent transfer claim as Xino's creditors*

As the Xino/Hythiam Agreement disposes of all claims Plaintiffs asserted as Xino's assignees, we turn now to Plaintiffs' only remaining claim to set aside the alleged fraudulent transfer by Xino to Hythiam. Relying on the release in paragraph 10 of the Plaintiff/Xino Agreement, the trial court concluded Plaintiffs "unambiguously release[d] all debts for all purposes" and, thus, lost standing to assert a fraudulent transfer claim. Plaintiffs contend paragraph 10 cannot be read as a blanket release of all debts because the agreement separately acknowledges certain outstanding advances, collectively referred to as the "Xino Debts," and provides that the "Xino Debts will be non-recourse as to Xino's current and future assets." Because paragraph 10 does not refer to the Xino Debts, Plaintiffs argue the agreement is ambiguous and susceptible of an interpretation under which they retain standing to pursue a fraudulent transfer claim as Xino's creditors. We disagree.

The determination of whether an ambiguity exists in an integrated contract is a question of law, subject to independent review on appeal. (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1350-1351.) As we shall explain, under the plain terms of the Plaintiff/Xino Agreement, Plaintiffs cannot satisfy the Xino Debts by recourse to Xino's assets. Plaintiffs' parol evidence is consistent with this interpretation and fails to expose any latent ambiguity in the agreement's terms. Because Plaintiffs have no right to payment from Xino's assets, Plaintiffs will obtain no benefit by setting aside Xino's alleged fraudulent transfer of those assets. Plaintiffs lack standing to pursue a fraudulent transfer claim.

23

b.    *The Plaintiff/Xino Agreement unambiguously states Plaintiffs shall have no recourse against Xino's assets*

To obtain relief under the Uniform Fraudulent Transfer Act, Civil Code section 3439 et seq.[4] (the UFTA), one must be "a creditor" of the transferor. (§ 3439.07, subd. (a).) A "Creditor" is a person who has a "claim" against a "debtor." (§ 3439.01, subd. (c).) A "Claim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." (*Id.*, subd. (b).) Under the UFTA, a creditor seeking relief against an alleged fraudulent transfer may obtain: (1) "[a]voidance of the transfer . . . to the extent necessary to satisfy the creditor's claim"; (2) "[a]n attachment or other provisional remedy against the asset transferred or its proceeds . . ."; and (3) an injunction or other equitable remedy "against further disposition . . . of the asset transferred or its proceeds." (§ 3439.07, subd. (a).)

As the statutory scheme makes clear, the sine qua non of standing under the UFTA is the plaintiff's right to satisfy a claim against the transferor by recourse to the "asset transferred or its proceeds." Without a "right to payment" from the debtor's transferred asset, a plaintiff has suffered no injury from the transfer and will receive no benefit from the remedies available under the UFTA. (See *Fidelity Natural Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 845 ["A creditor has not been injured unless the transfer puts beyond reach property the creditor *could subject to payment of his or her debt*"]; *Mehrtash v. Mehrtash* (2001) 93 Cal.App.4th 75, 81 [affirming judgment for defendant on fraudulent transfer claim where "[p]laintiff produced no evidence that the value of the property could support any net recovery for her in the event the conveyance were set aside"].)

---

[4]    All further statutory references will be to the Civil Code unless otherwise stated.

24

Plaintiffs contend the trial court failed to interpret the Plaintiff/Xino Agreement in a way that gives effect to all its terms by improperly focusing on the release in paragraph 10, while excluding parol evidence suggesting the release was not intended to encompass the Xino Debts.  While we have doubts about Plaintiffs' contention that parol evidence should have been accepted to limit the scope of the release, we agree that the focus on paragraph 10 is somewhat misplaced.[5]

In our view, the critical provision is Plaintiffs' express pledge that the "Xino Debts will be non-recourse as to Xino's current and future assets."  Under the UFTA, were the transfer of Xino's assets to be found fraudulent and declared void, the transferred assets would be regarded as Xino's assets, and subject to "claims" by creditors having a "right to payment" against Xino.  (§§ 3439.01, 3439.07.)  Plaintiffs relinquished their right to payment by agreeing the Xino Debts would be "non-recourse as to Xino's current and future assets."  In doing so, Plaintiffs surrendered their right to satisfy the Xino Debts by recourse to the "asset transferred or its proceeds."  (§ 3439.07, subd. (a).)

---

[5]     Because paragraph 10 does not refer to the Xino Debts, Plaintiffs contend the provision should be interpreted, consistent with their parol evidence, "to encompass any 'interest' that Plaintiffs may have had in Xino *other than* the interests previously identified, i.e., the 'Xino Shares' and the 'Xino Debts.' "  We are not so sure.  Paragraph 10 states: "If and to the extent any Plaintiff in the Xino Actions or Marsh have any equity, debt or other interest in Xino they hereby agree that, *except for the Retained Shares*, any such interest is hereby relinquished, released and extinguished . . . ."  (Italics added.)  In light of the specific carve-out for the Retained Shares, the absence of any reference to the Xino Debts suggests the parties intended paragraph 10 to encompass those interests.  Be that as it may, our decision is not dependent upon an expansive interpretation of paragraph 10.  Regardless of paragraph 10's scope, we find Plaintiffs surrendered their creditor claims by agreeing the Xino Debts would be non-recourse.  Plaintiffs' parol evidence is consistent with this conclusion.  Indeed, Goldman's testimony confirmed that suing Xino to collect the Xino Debts would have been "pointless" because Plaintiffs "couldn't collect on the judgment" under the non-recourse provision.  Without a "right to payment" against the transferor (§ 3439.01, subd. (b)), Plaintiffs have no standing to pursue a fraudulent transfer claim.

25

Our conclusion is consistent with the federal authorities cited by Plaintiffs. Although the district court in *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services* (S.D.N.Y 1995) 910 F.Supp. 913 observed that "a settlement with the debtor can . . . preserve the creditor's claims against transferees" (*id.* at p. 932), the court acknowledged that "[i]f the debt is satisfied, the creditor no longer has a cause of action to recover assets conveyed by the debtor to a transferee" (*id.* at p. 931). Similarly, in *In re Acequia, Inc*. (9th Cir. 1994) 34 F.3d 800, the federal appeals court reaffirmed that a plaintiff who " 'is no longer a creditor . . . is not entitled to the remedy of setting aside [the debtor]'s conveyance . . . as fraudulent' " (*id.* at p. 808), but held the principle did not apply to a post-confirmation proceeding brought by a bankruptcy trustee to recover an alleged fraudulent conveyance for the benefit of the corporate debtor. Unlike Plaintiffs here, who released any interest they may have had in Xino's current or future assets, the corporate debtor in *In re Acequia* retained an interest in having its fraudulently transferred assets returned. (See *Ibid.*)

By unambiguously declaring the Xino Debts to be "non-recourse as to Xino's current and future assets," the Plaintiff/Xino Agreement relinquishes any right Plaintiffs had to receive payment from the transferred assets. Thus, Plaintiffs lack standing to pursue a fraudulent transfer claim.

c.     *The Addendum affirms that Plaintiffs have no recourse against Xino's assets*

Plaintiffs contend the trial court abused its discretion by denying their requests to reopen evidence and to amend the complaint to assert standing under the Addendum. Plaintiffs cannot show prejudicial error. The Addendum, like the Plaintiff/Xino Agreement, states, "[n]otwithstanding any other provision herein, the Xino Debts will remain non-recourse as to Xino's former, current and future assets . . . ." Because Plaintiffs have no right to satisfy the Xino Debts by recourse to Xino's transferred assets, they lack standing to pursue a fraudulent transfer claim under the Addendum.

26

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.